# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CRYSTALLEX INTERNATIONAL
CORP.,

           Plaintiff,

          v.

PETRÓLEOS DE VENEZUELA, S.A.;
PDV HOLDING, INC.; and CITGO
HOLDING, INC., f/k/a PDV America,
Inc.,

          Defendants.

C.A. No. 15-1082-LPS

## DEFENDANTS PDV HOLDING, INC. AND CITGO HOLDING, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

OF COUNSEL:

Nathan P. Eimer
Lisa S. Meyer
EIMER STAHL LLP
224 S. Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com

February 3, 2016

Kenneth J. Nachbar (#2067)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
knachbar@mnat.com
*Attorney for Defendants PDV Holding, Inc. and CITGO Holding, Inc.*

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS .................................................................. 1

SUMMARY OF ARGUMENT ..................................................................................... 2

LEGAL STANDARD ................................................................................................. 4

PLAINTIFF'S ALLEGATIONS .................................................................................. 4

ARGUMENT ............................................................................................................. 6

    I.    Plaintiff Has Not Pled the Requisite Elements of a DUFTA Claim ...................... 6

        *1.*    *Plaintiff's fraudulent transfer claim against the CITGO Defendants must be dismissed because the CITGO Defendants are not "debtors."* ..... 6

        *2.*    *Plaintiff's fraudulent transfer claim also must be dismissed because the $2.8 billion that the CITGO Defendants allegedly transferred was not the "property of a debtor."* ................................................ 8

    II.    Plaintiff Has Failed to State a Claim for Civil Conspiracy ................................... 10

    III.    Plaintiff's Claims Are Preempted by the Foreign Sovereign Immunities Act ...... 11

    IV.    The Act of State Doctrine Bars Plaintiff's Claims ............................................... 15

CONCLUSION ......................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Amphenol Corp. v. Shandler (In re Insilco Techs., Inc.),*
  351 B.R. 313 (Bankr. D. Del. 2006) ........................................................... 7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..................................................................................... 4

*Aviation W. Charters, LLC v. Freer,*
  No. N14C-09-271, 2015 WL 5138285 (Del. Super. Ct. July 2, 2015) ...................................... 10

*Banco Nacional de Cuba v. Sabbatino,*
  376 U.S. 398 (1964) ..................................................................................... 17

*Braka v. Bancomer, S.N.C.,*
  762 F.2d 222 (2d Cir. 1985) ....................................................................... 16

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft,*
  154 A.2d 684 (Del. 1959) ........................................................................... 8

*Connolly v. Labowitz,*
  519 A.2d 138 (Del. Super. Ct. 1986) ........................................................ 10

*Dole Food Co. v. Patrickson,*
  538 U.S. 468 (2003) ................................................................................. 7, 9

*Eberhard v. Marcu,*
  530 F.3d 122 (2d Cir. 2008) ......................................................................... 8

*Edgewater Growth Capital Partners LP v. HIG Capital Inc.,*
  C.A. No. 3601-VCS, 2010 WL 720150 (Del. Ch. Mar. 3, 2010) ............................................. 10

*Envtl. Tectonics v. W.S. Kirkpatrick, Inc.,*
  847 F.2d 1052 (3d Cir. 1988) ..................................................................... 15

*Exp.-Imp. Bank of the Republic of China v. Grenada,*
  768 F.3d 75 (2d Cir. 2014) ........................................................................ 14

*Ferri v. Powell-Ferri,*
  No. MMXCV116006351S, 2012 WL 3854425 (Conn. Super. Ct. July 30, 2012) ................... 7

*FG Hemisphere Assocs., LLC v. Republique du Congo,*
  455 F.3d 575 (5th Cir. 2006) ..................................................................... 14

*Friedland v. Unum Grp.,*
  50 F. Supp. 3d 598 (D. Del. 2014) ............................................................. 4

*Grupo Protexa, S.A. v. All American Marine Slip,*
   20 F.3d 1224 (3d Cir. 1994) ................................................................ 15, 17

*Heiser v. Islamic Republic of Iran,*
   735 F.3d 934 (D.C. Cir. 2013) ................................................................. 9

*Hourani v. Mirtchev,*
   796 F.3d 1 (D.C. Cir. 2015) ................................................................... 16

*Hunt v. Mobil Oil Corp.,*
   550 F.2d 68 (2d Cir. 1977) ................................................................ 15, 16

*In re Healthco Int'l, Inc.,*
   201 B.R. 19 (Bankr. D. Mass. 1996) ......................................................... 8

*In re Philippine National Bank,*
   397 F.3d 768 (9th Cir. 2005) ................................................................. 16

*In re Wickes Trust,*
   C.A. No. 2515-VCS, 2008 WL 4698477 (Del. Ch. Oct. 16, 2008) ..................... 6, 7

*Mannington Mills, Inc. v. Congoleum Corp.,*
   595 F.2d 1287 (3d Cir. 1979) ................................................................ 17

*Martes v. USLIFE Corp.,*
   927 F. Supp. 146 (S.D.N.Y. 1996) ............................................................ 8

*Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel,*
   657 F.3d 1159 (11th Cir. 2011) .............................................................. 13

*Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado,*
   771 F.3d 980 (7th Cir. 2014) ................................................................ 13

*Quadrant Structured Products Co. v. Vertin,*
   102 A.3d 155 (Del. Ch. 2014) ............................................................... 10

*Raji v. Bank Sepah-Iran,*
   495 N.Y.S.2d 576 (N.Y. Sup. Ct. 1985) ................................................ 12, 13

*Republic of Argentina v. NML Capital, Ltd.,*
   134 S. Ct. 2250 (2014) ....................................................................... 14

*Reserves Mgmt. Corp. v. 30 Lots, LLC,*
   C.A. No. 08C–08–010 JTV, 2009 WL 4652991 (Del. Ch. Nov. 30, 2009) ........... 6, 8

*Roseton OL, LLC v. Dynegy Holdings Inc.,* |
   No. 6689-VCP, 2011 WL 3275965 (Del. Ch. July 29, 2011) ......................... 8, 9

*Rubin v. The Islamic Republic of Iran*,
  637 F.3d 783 (7th Cir. 2011), *as corrected* (Apr. 1, 2011) ................................................ 11, 12

*S&S Mach. Co. v. Masinexportimport*,
  706 F.2d 411 (2d Cir. 1983) ................................................................................................ 12, 13, 14

*S.J. Holding Co., Inc. v. Kadco, Inc.*,
  874 So.2d 1036 (Ala. 2009) ........................................................................................................ 7

*Stephens v. Nat'l Distillers & Chem. Corp.*,
  69 F.3d 1226 (2d Cir. 1995) ................................................................................................ 12, 13

*Strayhorn v. Wyeth Pharms., Inc.*,
  737 F.3d 378 (6th Cir. 2013) ..................................................................................................... 15

*Tepper v. Catalina Communities, L.L.C.*,
  No. C20085197, 2009 WL 7215329 (Ariz. Sup. Ct. Dec. 23, 2009) ........................................ 8

*Vohs v. Miller*,
  323 F. Supp. 2d 965 (D. Minn. 2004) ....................................................................................... 15

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.*,
  493 U.S. 400 (1990) ................................................................................................................. 15

## Statutes

28 U.S.C. § 1609 ............................................................................................................................ 11

28 U.S.C. § 1610(d) ........................................................................................................................ 12

6 Del. C. § 1301(a)(1) ...................................................................................................................... 6

6 Del. C. § 1304(a)(1) ............................................................................................................. 3, 6, 16

6 Del. C. § 1307(a) ......................................................................................................................... 11

6 Del. C. § 1307(a)(1) ..................................................................................................................... 14

6 Del. C. § 1308 .............................................................................................................................. 14

## Other Authorities

1 William M. Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 25 ............................ 7

## Rules

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 2, 4, 17

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Crystallex International Corp. brought this suit asserting claims under the Delaware Uniform Fraudulent Transfer Act, 6 Del. C. § 1301 *et seq.*, and for common-law civil conspiracy against Defendants Petróleos de Venezuela, S.A. ("PDVSA"), PDV Holding, Inc. ("PDVH"), and CITGO Holding, Inc. ("CITGO Holding"). PDVSA is the state-owned national oil company of the Bolivarian Republic of Venezuela ("Venezuela"),[1] and PDVH and CITGO Holding (collectively, the "CITGO Defendants") are direct and indirect U.S. subsidiaries, respectively, of PDVSA. PDVH holds the stock of CITGO Holding, which, in turn, holds the stock of U.S. oil company CITGO Petroleum Corporation ("CITGO").

The underlying dispute that prompted this action involves Plaintiff's gold mining activities in Venezuela. It has nothing to do with the United States or with the CITGO Defendants. Plaintiff, a Canadian company, contends that Venezuela did not fulfill its obligations to Plaintiff under a bilateral investment treaty between Venezuela and Canada. Plaintiff's claims against Venezuela are pending in an arbitration. The present action appears to be a preemptive step to execute on a yet-to-be-received arbitral award against Venezuela. With respect to the CITGO Defendants, Plaintiff takes issue with certain debt offerings and financial transactions engaged in by the CITGO Defendants in early 2015. Plaintiff alleges that Venezuela orchestrated these transactions in order to monetize the value of CITGO and transfer that value outside the United States, all in an effort to shield those assets from Plaintiff.

Plaintiff's claims in this case fail on several, independent grounds. Its claim against the CITGO Defendants under the Delaware Uniform Fraudulent Transfer Act ("DUFTA") must be dismissed because the requisite elements of such a claim—a transfer by a "debtor" of that

---

[1] PDVSA has not yet been served.

debtor's property—have not been pled. Plaintiff's civil conspiracy claim falls short because it cannot, as a matter of law, be grounded in a DUFTA claim. Moreover, to the extent that Plaintiff's claims are premised on the transfer of assets allegedly belonging to Venezuela, such claims are preempted as they are in direct conflict with the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611. Finally, Plaintiff's claims are barred by the act of state doctrine, which prevents this Court from sitting in judgment of a foreign sovereign's decisions regarding the allocation of public resources.

For these reasons, and those that follow, the CITGO Defendants respectfully move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF ARGUMENT

1.     *First,* Count One (fraudulent transfer) should be dismissed for failure to allege the necessary elements of that claim. DUFTA only applies to transfers made by a "debtor" of the plaintiff. Here, the CITGO Defendants clearly are not "debtors" of Plaintiff. Rather, the only alleged "debtors" of Plaintiff are Venezuela, based on Plaintiff's claims against Venezuela in the pending arbitration, and PDVSA, under an alter ego theory. In addition, DUFTA only applies to transfers of property belonging to a debtor, and the property at issue did not belong to Venezuela. The $2.8 billion allegedly transferred by CITGO Holding to PDVH, and then from PDVH to PDVSA, were assets of CITGO Holding and PDVH. Plaintiff's inability to allege an actionable transfer of property under the statute is fatal to its DUFTA claim.

2.     *Second,* Count Two (civil conspiracy) is defective as a matter of law. In Delaware, a claim for civil conspiracy requires an underlying predicate tort. The sole predicates for Plaintiff's conspiracy claim are the alleged fraudulent transfers. Because Plaintiff has not pled a viable fraudulent transfer claim, its civil conspiracy claim is necessarily doomed as well.

Even if Plaintiff had adequately alleged a DUFTA claim, dismissal of its civil conspiracy claim would still be required because Delaware law does not recognize a cause of action for conspiracy based on a fraudulent transfer.

3.      *Third,* to the extent Plaintiff's claims are premised on the transfer of property allegedly belonging to Venezuela, such claims are preempted by the FSIA. The FSIA sets forth a comprehensive and exclusive framework for evaluating all claims against a foreign sovereign, and renders the property of a foreign sovereign immune from prejudgment attachment. This prejudgment attachment immunity has been broadly interpreted to bar the application of any state law, court process, or order that immobilizes the assets of a foreign sovereign. As no judgment has been entered against Venezuela, any transfer of Venezuela's property could not be deemed to violate Delaware law, as Plaintiff has alleged, without running afoul of the FSIA.

4.      *Fourth,* Plaintiff's claims are barred by the act of state doctrine, which precludes U.S. courts from judging the validity of the public acts of a foreign sovereign. Plaintiff contends that Venezuela directed the transfer of $2.8 billion in funds "[w]ith actual intent to hinder, delay or defraud," 6 Del. C. § 1304(a)(1), and thus Plaintiff's claims necessarily turn on the legality of Venezuela's decisions regarding the allocation of public resources. Plaintiff here seeks a court ruling that the Venezuelan government devised and implemented a massive fraud conspiracy and an injunction restraining Venezuela's use of its assets and ordering the Venezuelan government to send billions of dollars to the United States. This interference with Venezuela's sovereignty would not only pose a significant threat to diplomatic relations between the United States and Venezuela, but it would also set a dangerous precedent that could have a material adverse impact on foreign relations generally.

## LEGAL STANDARD

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency

of a complaint's factual allegations. *Friedland v. Unum Grp.*, 50 F. Supp. 3d 598, 601 (D. Del.

2014). To withstand a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks omitted). That standard has not been met here and,

accordingly, Plaintiff's claims should be dismissed.

## PLAINTIFF'S ALLEGATIONS

Plaintiff Crystallex is a Canadian company that was engaged in a gold mining operation

in Venezuela. (Compl. ¶ 2.) In 2011, Plaintiff initiated an arbitration proceeding against

Venezuela pursuant to the Agreement between the Government of Canada and the Government

of the Republic of Venezuela for the Promotion and Protection of Investments before the World

Bank's International Centre for Settlement of Investment Disputes. (*Id.* ¶¶ 4, 41, 43, 45.). The

facts regarding that underlying dispute are not relevant to the present motion and have nothing to

do with the CITGO Defendants.

Although an award has yet to be issued in that arbitration, Plaintiff nevertheless filed this

suit, alleging that, to evade Plaintiff's future collection efforts on the anticipated award,

"Venezuela sought to monetize its interests in CITGO and repatriate those proceeds" to

Venezuela via several allegedly fraudulent transactions. (*Id.* ¶ 48.) Plaintiff asserts claims under

DUFTA and for civil conspiracy against PDVSA and the CITGO Defendants.[2] (*Id.* ¶¶ 11-13,

159-70.) Plaintiff does not allege that the CITGO Defendants had any involvement in the

---

[2] PDVSA is "a foreign corporation" with its "principal place of business . . . in Caracas,
Venezuela," while the CITGO Defendants, PDVH and CITGO Holding, were formed under the
laws of Delaware. (Compl. ¶¶ 11-13.)

underlying dispute between Plaintiff and Venezuela (*see id.* ¶¶ 20-45, 146-53), nor that the CITGO Defendants are liable to Plaintiff for any future arbitration award rendered against Venezuela. The Complaint alleges only that Plaintiff is a creditor of non-party Venezuela and PDVSA, as Venezuela's alter ego. (*See id.* ¶¶ 45, 77.)

According to the Complaint, Venezuela knew that investors who obtained arbitration awards against Venezuela would go after "its largest United States-based asset," CITGO. (*Id.* ¶ 6, 14.) Plaintiff claims that after an attempt to sell CITGO was unsuccessful, "Venezuela developed an alternative plan to convey money out of CITGO and back to Venezuela before it could be seized by Venezuela's creditors." (*Id.* ¶¶ 53-54.) The Complaint alleges a series of financial transactions between the CITGO Defendants and PDVSA to carry out Venezuela's purported plan to transfer $2.8 billion from the United States to Venezuela. (*Id.* ¶¶ 54-55.) Specifically, Plaintiff alleges that CITGO Holding arranged for a $1.5 billion bond issuance and a $1.3 billion loan facility, using a portion of the proceeds to purchase assets from CITGO for $748 million; that CITGO then returned this money to CITGO Holding in the form of a dividend; that CITGO Holding then issued a dividend totaling nearly $2.8 billion to PDVH; and that PDVH issued a dividend in the same amount to PDVSA. (*Id.* ¶¶ 56-60.) Plaintiff further alleges that these funds ultimately were transferred, "directly or indirectly," to the Venezuelan government. (*Id.* ¶ 60.)

The Complaint plainly acknowledges the distinctions between Venezuela and the CITGO Defendants. Although nearly 16 pages are devoted to alleging that PDVSA is an alter ego of Venezuela (*id.* ¶¶ 77-158), the Complaint contains no allegations that the CITGO Defendants are alter egos of Venezuela (or of PDVSA). The Complaint states that the CITGO Defendants are subsidiaries of PDVSA and that the companies have overlapping directors (*id.* ¶ 12-13, 54), but

it does not allege, nor could it, that the CITGO Defendants were sham corporations or claim any

other abuse of corporate form. Thus, Plaintiff's own allegations (or lack thereof) reflect a clear

separation between Venezuela and the CITGO Defendants.

## ARGUMENT

**I.      Plaintiff Has Not Pled the Requisite Elements of a DUFTA Claim**

Plaintiff's fraudulent transfer claim against the CITGO Defendants must be dismissed

because it fails to state a claim: the CITGO Defendants are not alleged to be "debtors" under

DUFTA, nor were the $2.8 billion of funds they allegedly transferred the "property of a debtor"

within the meaning of the statute.

> *1.   Plaintiff's fraudulent transfer claim against the CITGO Defendants must be dismissed
> because the CITGO Defendants are not "debtors."*

An essential element of a fraudulent transfer claim is a transfer by a "debtor." Under

DUFTA, "[a] transfer made . . . *by a debtor* is fraudulent as to a creditor . . . *if the debtor made*

*the transfer* . . . with actual intent to hinder, delay or defraud *any creditor of the debtor* . . . ." 6

Del. C. § 1304(a)(1) (emphasis added).[3] "Prominent in that language is that the transfer must be

fraudulent as to a *creditor*. Thus, in order to have a fraudulent transfer claim, one must first have

a valid claim against the person . . . alleged to have fraudulently made the transfer." *In re Wickes*

*Trust,* C.A. No. 2515-VCS, 2008 WL 4698477, at *8 (Del. Ch. Oct. 16, 2008); *see also Reserves*

*Mgmt. Corp. v. 30 Lots, LLC,* C.A. No. 08C–08–010 JTV, 2009 WL 4652991, at *5 (Del. Ch.

Nov. 30, 2009) ("A fraudulent transfer is one *made by the debtor.*" (emphasis added)).

---

[3] DUFTA defines "debtor" as a "person who is liable on a claim," a "creditor" as a "person who
has a claim," and "claim" as a "right to payment, whether or not the right is reduced to judgment,
liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,
equitable, secured or unsecured." 6 Del. C. § 1301(a)(1).

Plaintiff cannot pursue its fraudulent transfer claims against the CITGO Defendants because it is not a creditor of these entities. Plaintiff has no prospect of obtaining a future judgment against the CITGO Defendants. Rather, Plaintiff claims to be a creditor of Venezuela only and expects to receive an arbitral award against Venezuela only. Even if PDVSA were liable as Venezuela's alter ego, as Plaintiff alleges, that would not render either PDVH or CITGO Holding—separately incorporated, direct and indirect U.S. subsidiaries of PDVSA—"debtors" of Plaintiff. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."); *Amphenol Corp. v. Shandler (In re Insilco Techs., Inc.)*, 351 B.R. 313, 321 (Bankr. D. Del. 2006) ("It is an axiom of corporate law that the corporation is an entity, distinct from its stockholders even if the subsidiary's stock is wholly owned by one person or corporation." (citations and quotation marks omitted)); 1 William M. Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 25 ("It is generally accepted that the corporation is an entity distinct from its shareholders with rights and liabilities not the same as theirs individually and severally."). Simply put, there is no debtor-creditor relationship between Plaintiff and the CITGO Defendants as a matter of law. Accordingly, the alleged transfers made by the CITGO Defendants are not actionable under DUFTA and Plaintiff's fraudulent transfer claims against them should be dismissed. *See Wickes*, 2008 WL 4698477, at *8 (dismissing DUFTA claim on the ground that the plaintiff was not a creditor of the defendant transferor).[4]

---

[4] This result finds support in numerous cases from other jurisdictions interpreting fraudulent transfer statutes derived from the same Uniform Fraudulent Transfer Act as well as parallel provisions under the U.S. Bankruptcy Code. *See, e.g., S.J. Holding Co., Inc. v. Kadco, Inc.*, 874 So.2d 1036, 1040 (Ala. 2009) (concluding that Alabama's fraudulent transfer statute, by its plain language, "does not apply to claims against third-party transferors"); *Ferri v. Powell-Ferri*, No. MMXCV116006351S, 2012 WL 3854425, at *4 (Conn. Super. Ct. July 30, 2012) (same under Connecticut law); *Tepper v. Catalina Communities, L.L.C.*, No. C20085197, 2009 WL 7215329,

2.  *Plaintiff's fraudulent transfer claim also must be dismissed because the $2.8 billion that the CITGO Defendants allegedly transferred was not the "property of a debtor."*

Plaintiff's DUFTA claim against the CITGO Defendants also must be dismissed because the $2.8 billion that they allegedly transferred was not the "property of a debtor."

Under DUFTA, a "transfer" is defined as "[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset . . . ." 6 Del. C. § 1301(12). An "asset," in turn, is defined as "property of a debtor." *Id.* § 1301(2). Therefore, as a threshold matter, the "asset" that is the subject of a fraudulent transfer claim must be the "property of a debtor." *See Roseton OL, LLC v. Dynegy Holdings Inc.*, No. 6689-VCP, 2011 WL 3275965, at *15-17 (Del. Ch. July 29, 2011) ("DUFTA focuses on 'transfers' of an 'asset,' which is defined to mean the 'property of the debtor.'"); *Reserves Mgmt.*, 2009 WL 4652991, at *5.

Under Delaware law, the property of a debtor—here, Venezuela—does not include the assets of a corporation whose shares the debtor owns. *See Roseton*, 2011 WL 3275965, at *15-17; *see also Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. 1959). And even if PDVSA were liable as Venezuela's alter ego, a judgment creditor could not seize the assets of PDVSA's subsidiaries to satisfy a judgment against Venezuela because those assets do not belong to Venezuela or PDVSA:

> A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of

---

at *1 (Ariz. Sup. Ct. Dec. 23, 2009) (same under Arizona law); *Eberhard v. Marcu*, 530 F.3d 122, 129 (2d Cir. 2008) ("It is well settled that in order to set aside a fraudulent conveyance, one must be a creditor of the transferor"); *Martes v. USLIFE Corp.*, 927 F. Supp. 146, 148 (S.D.N.Y. 1996) ("[E]ven if a transfer is made with actual intent to defraud creditors, one must be a creditor in order to complain."); *In re Healthco Int'l, Inc.*, 201 B.R. 19, 21 (Bankr. D. Mass. 1996) (ruling that fund transfers at issue were "not transfers by the Debtor and hence are immune from fraudulent transfer attack" under federal bankruptcy law).

the subsidiary. The fact that the shareholder is a foreign state does not change the analysis.

*Dole Food*, 538 U.S. at 475 (internal citations omitted); *see also Insilco Techs.*, 351 B.R. at 321.

For these reasons, the CITGO Defendants' assets could not be executed upon to satisfy a

judgment against Venezuela or PDVSA. *See Heiser v. Islamic Republic of Iran*, 735 F.3d 934,

938 (D.C. Cir. 2013) (explaining "the established principle that 'a judgment creditor cannot

acquire more property rights in a property than those already held by the judgment debtor'").

In this case, the $2.8 billion that the CITGO Defendants allegedly transferred was not the

"property of a debtor" within the meaning of the statute. The Delaware Chancery Court's

opinion in *Roseton* is instructive in this regard. There, the plaintiff creditor sought a temporary

restraining order under DUFTA preventing the transfer of two power plants owned by

subsidiaries of the defendant debtor. 2011 WL 3275965, at *1. The court denied this request,

concluding that the proposed transaction did not "contemplate a predicate transfer of property

belonging to [debtor]," as required to state a fraudulent transfer claim under DUFTA. *Id.* at *15.

In reaching this conclusion, the court reasoned that the power plants were not the property of the

debtor defendant; rather, the debtor merely owned "equity interests in multiple subsidiaries that

directly own[ed] the physical assets." *Id.* So too here. The assets that are the subject of Plaintiff's

DUFTA claim were the property of a *subsidiary* of the alleged debtor, Venezuela, and not of the

debtor itself. Because Venezuela did not own the $2.8 billion in funds, the transfer of those funds

by the CITGO Defendants cannot form the basis of a DUFTA claim.[5]

_____

[5] Plaintiff alleges, without further explanation, that the assets or shares of CITGO Holding "could readily be attached and executed to pay arbitral awards against Venezuela." (Compl. ¶ 162(v).) Not so. As explained above, even if Plaintiff obtains an arbitral award against Venezuela and PDVSA is deemed liable as an alter ego, Plaintiff could not seize the assets of PDVH (which include the shares of CITGO Holding) or the assets of CITGO Holding, as such property is not owned by Venezuela or PDVSA. Plaintiff's legal conclusions to the contrary can

## II.     Plaintiff Has Failed to State a Claim for Civil Conspiracy

Plaintiff's civil conspiracy claim necessarily fails as well because, under Delaware law, a

claim for civil conspiracy must be based on a separate, viable tort. *See, e.g., Connolly v.*

*Labowitz*, 519 A.2d 138, 143 (Del. Super. Ct. 1986) ("To be actionable a civil conspiracy must

embody an underlying wrong which would be actionable in the absence of the conspiracy"). The

sole basis for Plaintiff's conspiracy claim is the alleged fraudulent transfer (*see* Compl. ¶ 166

(alleging Defendants "agreed to enter into a series of transactions expressly designed to remove

$2.8 billion from the United States to Venezuela")), which, for the reasons discussed above, is

not actionable. This requires dismissal of Plaintiff's civil conspiracy claim.

Even if Plaintiff could state a DUFTA claim, the civil conspiracy claim would still be

legally deficient. Delaware law is clear that a civil conspiracy claim cannot be premised on a

fraudulent transfer. *Edgewater Growth Capital Partners LP v. HIG Capital Inc.*, C.A. No. 3601-

VCS, 2010 WL 720150, at *2 (Del. Ch. Mar. 3, 2010) ("[DUFTA] does not create a cause of

action for aiding and abetting, or conspiring to commit, a fraudulent transfer . . . . The General

Assembly obviously could have explicitly provided for liability for aiding and abetting a

fraudulent transfer, but it did not."); *see also Aviation W. Charters, LLC v. Freer*, No. N14C-09-

271, 2015 WL 5138285, at *10 (Del. Super. Ct. July 2, 2015) ("Civil conspiracy cannot be

attached to claims for fraudulent transfer . . . ."); *Quadrant Structured Products Co. v. Vertin*,

102 A.3d 155, 203 (Del. Ch. 2014) (same). Plaintiff thus cannot state a civil conspiracy claim

based on the allegedly fraudulent transfers.

---

be disregarded. *See Iqbal*, 556 U.S. at 678 ("Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [the court is] not bound to accept as true a legal conclusion couched as a factual allegation." (quotation marks omitted)).

### III.    Plaintiff's Claims Are Preempted by the Foreign Sovereign Immunities Act

As previously established, the $2.8 billion that the CITGO Defendants allegedly transferred did not belong to Venezuela. Nevertheless, to the extent that Plaintiff has asserted otherwise and targets the property of Venezuela,[6] its claims are preempted by the FSIA. State law claims cannot stand where, as here, they would inhibit the movement of a foreign sovereign's assets as allowed under federal law.

Plaintiff contends that the alleged transfer of Venezuela's property outside of the United States violated DUFTA, and seeks various equitable remedies on the basis of this supposed violation. DUFTA provides a creditor with recourse to prejudgment remedies designed to recover the debtor's transferred property and to restrain the debtor from further dissipating its property. Such remedies include avoidance of the transfer or obligation; an "attachment or other provisional remedy against the asset transferred or other property of the transferee"; and an "injunction against further disposition by the debtor or a transferee." 6 Del. C. § 1307(a).

Under the FSIA, however, a foreign sovereign's property cannot be restrained *in any way* prior to the entry of a judgment against that sovereign. The FSIA "cloaks [a] foreign sovereign's property with a presumption of immunity from attachment and execution unless an exception applies." *Rubin v. The Islamic Republic of Iran*, 637 F.3d 783, 799 (7th Cir. 2011), *as corrected* (Apr. 1, 2011); *see* 28 U.S.C. § 1609 (providing that "the property in the United States of a foreign state shall be immune from attachment arrest and execution" to satisfy an existing or anticipated judgment except as specifically provided in the statute). A foreign sovereign's

---

[6] *See, e.g.*, Compl. ¶ 48 ("Venezuela sought to monetize *its interests* in CITGO and repatriate those proceeds, thereby shielding them from attempts to enforce any arbitral award." (emphasis added)); *id.* ¶ 47 ("CITGO is *Venezuela's most significant asset* in the United States . . . ." (emphasis added)).

property is completely "immune from *prejudgment* attachment" under the FSIA unless the foreign sovereign explicitly waives such immunity. *S&S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 416 (2d Cir. 1983) (emphasis added); 28 U.S.C. § 1610(d)[7]; *see also Raji v. Bank Sepah-Iran*, 495 N.Y.S.2d 576, 580-81 (N.Y. Sup. Ct. 1985) ("Pre-judgment attachments, . . . inherently burdensome because they encumber property before a final adjudication of the action on the merits, are permitted only in situations where the foreign sovereign has already explicitly waived its immunity.").

This prejudgment attachment immunity, which "inheres in the property itself," *Rubin*, 637 F.3d at 799, has been broadly interpreted to bar the application of any state law, court process, or order that "immobilize[s]" the assets of a foreign sovereign. *S&S Mach.*, 706 F.2d at 412; *see also Stephens v. Nat'l Distillers & Chem. Corp.*, 69 F.3d 1226, 1230 (2d Cir. 1995) (stating that the "principle behind the prohibition against [prejudgment] attachments should apply broadly"); *Raji*, 495 N.Y.S.2d at 581 (explaining that "'attachment' in the context of the FSIA has a broader meaning than in the traditional civil procedure sense[,] . . . encompass[ing] all encumbrances and restraints imposed to prevent the dissipation of assets before judgment," and that the term "must be held to include all provisional remedies available under state law"). For example, in *S&S Machinery*, the Second Circuit held that an injunction prohibiting a foreign state from negotiating letters of credit "flout[ed] . . . the FSIA ban on prejudgment attachment of assets belonging to a 'foreign state.'" 706 F.2d at 418. As the panel reasoned, "the FSIA would become meaningless if courts could eviscerate its protections merely by denominating their restraints as injunctions against the negotiation or use of property rather than as attachments of

---

[7] Section 1610(d) provides, in relevant part, that "[t]he property of a foreign state . . . shall not be immune from attachment prior to the entry of judgment in any action brought in a court of the United States or of a State, . . . , if . . . the foreign state has explicitly waived its immunity from attachment prior to judgment . . . ."

that property." *Id.* To that end, the Court held that the FSIA's ban on prejudgment attachments

precludes "any other means to effect the same result." *Id.* Similarly, at least two courts of appeal

have concluded that state laws requiring the posting of prejudgment security could not be

enforced against foreign sovereigns because doing so would constitute a prejudgment

"attachment" of their assets in contravention of the FSIA. *See Pine Top Receivables of Ill., LLC*

*v. Banco de Seguros del Estado*, 771 F.3d 980, 984 (7th Cir. 2014); *Stephens*, 69 F.3d at 1230.

In this case, Plaintiff is attempting to use Delaware law to circumvent the prejudgment

immunity afforded to a foreign sovereign's property under the FSIA. Despite the fact that no

judgment has been entered against Venezuela, Plaintiff seeks to impose liability on Defendants

for the alleged transfer of Venezuela's property and, relying on the prejudgment remedies

available under DUFTA, requests an injunction "directing the Defendants to return the nearly

$2.8 billion that they removed to Venezuela" and "enjoining the Defendants from further

attempts to remove assets"—including "any portion of the $2.8 billion that remains in the United

States"—from the country. (Compl. at p. 38 (prayer for relief)). To the extent that DUFTA

creates this alleged right in Plaintiff to restrain Venezuela's property before issuance of a

judgment, or a duty upon Venezuela to preserve its assets within Plaintiff's reach, it is preempted

by Congress's judgment that U.S. courts cannot interfere with the use or disposition of a foreign

state's property before a judgment has been entered. *See Stephens*, 69 F.3d at 1231-32

(concluding that that the FSIA's language and its legislative history "supports the interpretation

that [the FSIA] means to preempt state law" and holding that the FSIA preempted New York

insurance law); *Raji*, 495 N.Y.S.2d at 582; *see also Odyssey Marine Expl., Inc. v. Unidentified*

*Shipwrecked Vessel*, 657 F.3d 1159, 1179 (11th Cir. 2011) (holding that the FSIA preempted

federal common law regarding immunity of sovereign property and explaining that "the FSIA is

intended to preempt any other State or Federal law" (internal quotation marks omitted)).[8] Put

differently, Plaintiff cannot invoke DUFTA in an effort to "immobilize [Venezuela's] assets

when an attachment of those assets would be" barred under the FSIA. *S&S Mach.*, 706 F.2d at

412. To conclude otherwise would "eviscerate" the presumptive immunity of foreign state

property. *Id.* at 418.

      Moreover, Plaintiff's requested injunctive relief—requiring Defendants to return funds

allegedly sent to Venezuela—is also clearly barred. Property belonging to a foreign sovereign

and *not* in the United States cannot be executed upon or attached by any United States court. *See*

*Exp.-Imp. Bank of the Republic of China v. Grenada*, 768 F.3d 75, 87 & n.12 (2d Cir. 2014)

(after court of appeals and district court denied request to restrain funds in the United States

during pendency of action, sovereign removed those funds from the country; the courts

subsequently refused to order sovereign to return those funds to the United States); *see also*

*Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2257 (2014) (recognizing that U.S.

courts "generally lack authority . . . to execute against property in other countries"). This applies

both to funds belonging to Venezuela that may have already been removed from the United

States and any of its funds that might be removed in the future prior to any valid attachment or

execution. *See FG Hemisphere Assocs., LLC v. Republique du Congo*, 455 F.3d 575, 589 (5th

Cir. 2006).

      Finally, as Plaintiff's civil conspiracy claim is predicated on allegations that Defendants

violated DUFTA, that claim is preempted as well. Where a state law is preempted, a conspiracy

---

[8] Further, because Plaintiff cannot obtain "[a]voidance" (i.e., invalidation) of the transfers
without violating the FSIA, Plaintiff is not entitled to damages under DUFTA. 6 Del. C. §
1307(a)(1) (describing "avoidance of the transfer" as a remedy available to creditors); *id.* § 1308
(providing that "the creditor may recover judgment for the value of the asset transferred" if the
"transfer is voidable . . . under § 1307(a)(1)").

claim predicated on violation of that state law is also preempted. *See, e.g., Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 400 (6th Cir. 2013); *Vohs v. Miller*, 323 F. Supp. 2d 965, 973-74 (D. Minn. 2004).

## IV.    The Act of State Doctrine Bars Plaintiff's Claims

Plaintiff's claims are also barred by the act of state doctrine. This doctrine, which derives from separation of powers concerns, "is the judiciary's institutional response to the foreign relations tensions that can be generated when a United States court appears to sit in judgment on a foreign state's regulation of its internal affairs." *Envtl. Tectonics v. W.S. Kirkpatrick, Inc.*, 847 F.2d 1052, 1057 (3d Cir. 1988).[9] A suit must be dismissed under the act of state doctrine where its resolution would require a U.S. court "to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.*, 493 U.S. 400, 405 (1990). The doctrine applies where the foreign government has acted in its "sovereign capacity" and there is "some indication of the depth and nature of the government's interest." *Grupo Protexa, S.A. v. All American Marine Slip*, 20 F.3d 1224, 1237 (3d Cir. 1994). The suit must also present "a potential institutional conflict between the judicial and political branches such that a judicial inquiry into the validity of a foreign state's actions could embarrass the political branches in their conduct of foreign affairs." *Id.* These requirements are easily met here.

To begin, the outcome of this case unquestionably turns upon the lawfulness of the Venezuelan government's alleged conduct. To prevail on its claims, Plaintiff must prove that the debtor, Venezuela, orchestrated the transfers with the "actual intent to hinder, delay or defraud." 6 Del. C. § 1304(a)(1). On this score, the Complaint alleges that the Venezuelan government

---

[9] That Venezuela is not a named party in this case is of no consequence. The act of state doctrine applies regardless of whether the foreign sovereign is a party to the action. *See, e.g., Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 75-76 (2d Cir. 1977).

gave orders to the Venezuelan state-owned company PDVSA with the intent to "hinder and delay" Plaintiff's "ability to recover the billions of dollars owed to it by Venezuela" and that Venezuela conceived of and directed a conspiracy with PDVSA to achieve that end. (Compl. ¶¶ 1, 49-77, 159-70.) In adjudicating this case, the Court will necessarily have to inquire into the validity of the Venezuelan government's activities in Venezuela—exactly what the act of state doctrine is intended to preclude. *See Hourani v. Mirtchev*, 796 F.3d 1, 15 (D.C. Cir. 2015) ("That the [plaintiffs] do not directly sue the Kazakh government or seek damages from it is beside the point. The Act of State doctrine turns on what must be adjudicated, and having intertwined the [Kazakh government and the private party defendant] in 'active' collaboration and joint publication of the defamation, the [plaintiffs'] complaint requires that the defamatory content— the 'legality'—of that published and official foreign government speech be adjudicated."); *Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 77 (2d Cir. 1977) (dismissing antitrust claim because it "is admittedly not viable unless the judicial branch examines the motivation of the Libyan action and that inevitably involves its validity").

In addition, the allegations here involve Venezuela acting in its sovereign capacity in a matter of significant public interest. A foreign sovereign's decisions about how to run its economy and manage its public resources should not be subject to scrutiny by U.S. courts. *See In re Philippine National Bank*, 397 F.3d 768, 773 (9th Cir. 2005) (concluding that the sovereign act at issue—a forfeiture decree requiring the return of funds to the Philippines—implicated the "public interest of the Philippine government" and was subject to the act of state doctrine); *see also Braka v. Bancomer, S.N.C.*, 762 F.2d 222, 225 (2d Cir. 1985) (issuance of exchange controls, an action "taken by the Mexican government for the purpose of saving its national economy from the brink of monetary disaster" and which prevented the defendant state-owned

bank from performing its contractual obligations, represented the "exercise of powers peculiar to sovereigns" (internal alterations omitted)).

Finally, the claims asserted here threaten diplomatic relations between the United States and Venezuela. This case stands in stark contrast to commercial disputes between private parties that only tangentially touch upon the actions of a foreign sovereign. *See, e.g., Grupo Protexa*, 20 F.3d at 1238 (act of state doctrine did not apply to insurance coverage dispute between private parties requiring court to assess a Mexican port captain's removal order); *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287 (3d Cir. 1979) (foreign government's issuance of a patent was ministerial in nature and did not implicate the act of state doctrine). In this suit, Plaintiff seeks a court ruling that the Venezuelan government *itself* orchestrated an unlawful, multi-billion dollar fraud conspiracy and requests an injunction restraining Venezuela's use of its assets and ordering the Venezuelan government to send billions of dollars to the United States. Resolution of such issues would undoubtedly "touch . . . sharply on national nerves," *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 428 (1964), providing a further compelling reason for the Court to abstain from hearing this case.

## CONCLUSION

For the foregoing reasons, the CITGO Defendants respectfully request that the Court grant their motion pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismiss this suit for failure to state a claim upon which relief can be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


/s/ Kenneth J. Nachbar
Kenneth J. Nachbar (#2067)
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
knachbar@mnat.com

OF COUNSEL:

Nathan P. Eimer
Lisa S. Meyer
EIMER STAHL LLP
224 S. Michigan Avenue
Suite 1100
Chicago, IL 60604
(312) 660-7600
NEimer@eimerstahl.com
LMeyer@eimerstahl.com

*Attorney for Defendants PDV Holding, Inc.*
*and CITGO Holding, Inc.*

February 3, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2016, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF which will send notification of such filing

to all registered participants including:

Raymond J. DiCamillo
Jeffrey L. Moyer
Travis S. Hunter
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801

/s/ Kenneth J. Nachbar
Kenneth J. Nachbar (#2067)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200