## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> PETRÓLEOS DE VENEZUELA, S.A.; PDV HOLDING, INC.; and CITGO HOLDING, INC., f/k/a PDV AMERICA, INC., <br><br> Defendants. | Civil Action No. 15-1082-LPS |

Raymond J. DiCamillo, Jeffrey L. Moyer, and Travis S. Hunter, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Del.

Robert L. Weigel, Jason W. Myatt, and Rahim Moloo, GIBSON, DUNN & CRUTCHER LLP, New York, N.Y.

Attorneys for Plaintiff Crystallex International Corp.

Kenneth J. Nachbar, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Del.

Nathan P. Eimer and Lisa S. Meyer, EIMER STAHL LLP, Chicago, Ill.

Attorneys for Defendants PDV Holding, Inc. and CITGO Holding, Inc.

## MEMORANDUM OPINION

September 30, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.    BACKGROUND

This action is rooted in a dispute over the Bolivarian Republic of Venezuela's alleged unlawful expropriation of certain mining rights and investments belonging to a Canadian company, Plaintiff Crystallex International Corporation ("Crystallex").  Plaintiff alleges that Venezuela, aware of the possibility of a large award against it in an ensuing World Bank arbitration, orchestrated a scheme to monetize its American assets and pull the proceeds out of the United States, in order to evade potential arbitration creditors.  (*See generally* D.I. 1)

Defendants PDV Holding, Inc. ("PDVH") and CITGO Holding, Inc. ("CITGO Holding") (together, "CITGO Defendants"), both Delaware corporations, are wholly-owned subsidiaries of Petróleos de Venezuela, S.A. ("Petróleos").  Plaintiff contends that Petróleos, a state-owned Venezuelan company, is an *alter ego* of the Venezuelan government.  Plaintiff alleges that Venezuela and Petróleos caused CITGO Holding to issue $2.8 billion in debt, the proceeds from which were later paid to its parent company, PDVH, as a dividend.  PDVH then transferred this sum further up the ladder and out of the U.S. by issuing a dividend in the same amount to its own parent, Petróleos.  In Plaintiff's view, this series of events (the "Transaction(s)") was carried out in order to repatriate funds to Venezuela, where they would be "safe from execution by creditors."  (D.I. 14 at 6; *see generally* D.I. 1)

Plaintiff filed a Complaint (D.I. 1) with this Court asserting claims based on the Delaware Uniform Fraudulent Transfer Act ("DUFTA"), 6 Del. C. § 1301 *et seq.*, and civil conspiracy. Plaintiff seeks a judgment ordering the return of $2.8 billion in Transaction proceeds to the United States, awarding money damages against Defendants in the alternative, and enjoining the

1

further transfer of remaining funds or assets out of the United States.

CITGO Defendants moved to dismiss the Complaint for failure to state a claim. (D.I. 8) The parties have completed briefing (*see* D.I. 9, 14, 15, 23[1]) and the Court heard oral argument on July 12, 2016. (*See* D.I. 29 ("Tr."))

## II.   LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact)." *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1]At oral argument the Court granted Plaintiff's motion for leave to file a sur-reply brief. (*See* D.I. 18, 22)

(2009).  At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiffs claim.  *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## III.    DISCUSSION

CITGO Defendants contend that Plaintiff's DUFTA claim fails as a matter of law and that a claim for civil conspiracy cannot be built on DUFTA.  They further contend that Plaintiff's claims are barred by the Foreign Sovereign Immunities Act ("FSIA") as well as the act of state doctrine.  For the reasons given below, CITGO Defendants' motion will be denied in part and granted in part.

### A.    Delaware Uniform Fraudulent Transfer Act

DUFTA provides in relevant part that "[a] transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . if the debtor made the transfer or incurred the obligation [w]ith actual intent to hinder . . . any creditor of the debtor."  6 Del. C. § 1304(a)(1).  CITGO Defendants contend that Plaintiff's DUFTA claim suffers from two fatal flaws: (i) there was no "transfer" made under the statute, because the Transactions did not involve movement of "property of a debtor;" and (ii) there was no relevant

3

transfer made "by a debtor."[2]  *See* 6 Del. C. §§ 1301, 1304.

### 1.    Existence of a "Transfer"

A DUFTA "transfer" includes "every mode, direct or indirect, . . . of disposing of or

parting with an asset or an interest in an asset." *Id.* § 1301(12).  An "asset" is defined broadly as

a debtor's "property," and "property" is in turn identified as "anything that may be the subject of

ownership." *Id.* § 1301(2), (10).  In short, in order for a fraudulent transfer to exist under the

statute, there must be some transfer of debtor property involved.

CITGO Defendants emphasize that, although they are wholly-owned direct and indirect

subsidiaries of Petróleos, basic tenets of corporate law dictate that Petróleos has no ownership

interest in CITGO Defendants' assets.  As CITGO Defendants note, "[a] corporate parent which

owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the

assets of the subsidiary," and "[t]he fact that the shareholder is a foreign state does not change the

analysis." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003); *see also Scholes v. Lehmann*,

56 F.3d 750, 754 (7th Cir. 1995) (stating sole shareholder's corporate "robotic tools" are

"nevertheless in the eyes of the law separate legal entities with rights and duties").  As neither

Venezuela nor Petróleos has any ownership interest in CITGO Defendants' assets, it follows, in

CITGO Defendants' view, that no "transfer" of debtor property has occurred.

Plaintiff, urging the Court to look at the "economic reality" of the Transactions, counters

that the proceeds of the Transactions were substantively Venezuelan property at all relevant

times, and that the Transactions merely changed the "form" of these assets.  (D.I. 14 at 11-13)

_____

[2]Venezuela is not a party to this action.  In deciding the motion, the Court accepts as true
Plaintiff's allegation that Petróleos is Venezuela's *alter ego* (*see* D.I. 1 at 18-33) and is,
therefore, an alleged "debtor . . . liable on a claim." *See* Del. C. § 1301(6).

Plaintiff's argument, at its root, is that Petróleos's extraction of value from its wholly-owned

subsidiaries diminishes the value of Petróleos's equity interest in those subsidiaries and qualifies

as a "transfer" of a debtor's property under DUFTA.  (D.I. 14 at 13)

In the absence of specific guidance from the Supreme Court of Delaware, this Court's role

is to "predict how that tribunal would rule" on this issue of state law.  *In re Makowka*, 754 F.3d

143, 148 (3d Cir. 2014) (internal quotation marks omitted).  Decisions of Delaware's lower

courts are not controlling but are given "due deference."  *Id.*

CITGO Defendants cite to the Delaware Court of Chancery's recent decision in *Spring*

*Real Estate, LLC v. Echo/RT Holdings, LLC*, 2016 WL 769586 (Del. Ch. Feb. 18, 2016).  That

case involved a Chapter 7 bankruptcy trustee's efforts to unwind a subsidiary's transfer of assets

to a third party.  The court held that transactions involving a subsidiary's assets, even if they

reduce the value of the parent's stock in the subsidiary, are not transfers of the parent's property.

*Id.* at *3 ("[A]n act of a subsidiary that decreases the value of the shares of the subsidiary owned

by its parent does not confer to a trustee of the parent standing to challenge the subsidiary's

transfer.").[3]

Plaintiff responds in part by citing to *Roseton OL, LLC v. Dynegy Holdings Inc.*, 2011

WL 3275965 (Del. Ch. July 29, 2011).  In *Roseton*, the Court of Chancery was confronted with a

---

[3]Although a DUFTA claim was involved in the litigation, the *Spring Real Estate* court
was focused instead on application of the bankruptcy code.  *See* 2016 WL 769586, at *3
("Property of the debtor is best understood as that property that would have been part of the
estate had it not been transferred before the commencement of bankruptcy proceedings.")
(internal quotation marks omitted).  This does not, however, diminish the case's persuasiveness.
The bankruptcy code's provisions are similar to – and perhaps even broader than – the DUFTA
provisions at issue in this case.  *Compare* 11 U.S.C. § 541(a)(1) (estate comprises "all legal or
equitable interests of the debtor," with certain exceptions) *with* 6 Del C. § 1301(10) (debtor's
property is "anything that may be the subject of ownership.").

dispute in which a lessor plaintiff sought to enjoin a series of transactions carried out by a guarantor. The lessor and guarantor had entered into an agreement that restrained the guarantor defendant's ability to dispose of substantially all of its assets. The guarantor wished to carry out a reorganization that would include transfers of direct subsidiary equity and substantial assets owned by indirect subsidiaries. Plaintiff suggests that the reason *Roseton* found "there was no fraudulent transfer because the transaction actually improved the debtor's ability to meet its financial obligations." (D.I. 14 at 14)

Contrary to Plaintiff's view, *Roseton* is another guidepost suggesting that a transfer of embedded "value" – rather than of directly-held assets – is not a "transfer" of an "asset" on which a DUFTA claim may stand.[4] *Roseton* held that the plaintiff likely[5] had not alleged a "necessary predicate transfer" on which a DUFTA claim could be based. *Id.* at *15. This conclusion rested on a finding that "Plaintiffs' allegations as to the [subsidiaries' assets] at issue do not involve the 'transfer' of any 'asset' of [the parent company defendant] because [the defendant] does not directly own any of [its subsidiaries' assets] subject to transfer in the Proposed Transaction," but rather "owns equity interests in multiple subsidiaries that directly own the physical assets." *Id.* The court's attention to the value embedded in those equity interests was limited to a separate analysis underlying its observation that, even if a "predicate transfer" was alleged, the plaintiff was unlikely to succeed in showing lack of reasonably equivalent value in the proposed transactions. *See id.* at *15-16.

---

[4]The footnote Plaintiff cites to is no more than a recognition that the *Roseton* defendant's movement of directly-owned equity could be a DUFTA "transfer." This is not in dispute.

[5]The *Roseton* court's decision was an application of "something . . . akin to the preliminary injunction standard." 2011 WL 3275965, at *8.

The Court finds these cases persuasive and useful in predicting how the Supreme Court of Delaware would rule if confronted with the issue presented here. "Delaware public policy does not lightly disregard the separate legal existence of corporations." *Spring Real Estate,* 2016 WL 769586, at *3 n.35 (internal quotation marks omitted). "Persuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) (internal quotation marks omitted).

Fraudulent transfer laws exist to preserve a creditor's ability to satisfy claims. It follows that a debtor's "property" is therefore best understood as that which would have been available to satisfy the creditor's claim but-for the fraudulent transfer, according due respect to the corporate form. *See Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. 1959) ("A creditor of the parent corporation may not, in the absence of fraud, disregard the separate existence of a subsidiary corporation and look directly to specific assets of a subsidiary for satisfaction of his claim against the parent."); *United States v. Patras*, 544 F. App'x 137, 144 (3d Cir. 2013) (explaining that New Jersey fraudulent transfer law "focuses on the transfer of property that would otherwise be available to creditors").[6]

For as long as the Transactions' proceeds were assets of CITGO Defendants rather than

---

[6]Plaintiff quotes *Mitchell v. Lyons Professional Services, Inc.*, 109 F. Supp. 3d 555, 565 (E.D.N.Y. 2015), for the proposition that "fraudulent transfer laws bring within them not only transfers of property, but any transaction done with the intent to 'hinder' or 'delay' creditors," including transfers that diminish the value of a property interest. (D.I. 14 at 8) The *Mitchell* court applied New York's fraudulent conveyance law, which differs from DUFTA. *Compare* N.Y. Debt. & Cred. Law § 276 ("Every conveyance made . . . with actual intent . . . to hinder . . . creditors, is fraudulent . . . .") *and* N.Y. Debt. & Cred. Law § 270 (defining "conveyance" broadly as "every payment of money, . . . transfer, . . . or pledge of tangible or intangible property") *with* 6 Del. C. § 1301(2), (12) ("transfer" requires disposition of "property of a debtor").

Petróleos, Plaintiff would not have had any right to those funds – unless CITGO Defendants' corporate forms were disregarded through reverse veil piercing or if CITGO Defendants were deemed agents of Petróleos. *See Buechner*, 154 A.2d at 687. The Complaint does not allege that CITGO Defendants are *alter egos* of Venezuela or Petróleos. (*See generally* D.I. 1)[7] It follows that Plaintiff's assertion that "the $2.8 billion currently in the possession of Petróleos and Venezuela was always the property of the debtor" is incorrect.

Still, the Transactions can be characterized as more than the mere movement of embedded value or depletion of asset value; they allegedly involve the ultimate extraction of that value by the "debtor" itself. Plaintiff observes that, for at least some time between PDVH's declaration of a dividend and the transfer of that dividend to Petróleos, "PDVH indisputably had assets of [Petróleos] in its possession." (D.I. 14 at 12 n.3) This declared but then as-yet unpaid dividend might theoretically have been available to satisfy Plaintiff's claim.[8] Because the unpaid dividend was Petróleos's property,[9] at least some transfer of "property of a debtor" would have

---

[7]Even if the Complaint contained such an allegation, whether Delaware law recognizes reverse veil piercing is an unsettled question. *See Sky Cable, LLC v. Coley*, 2016 WL 3926492, at *13, *18 (W.D. Va. July 18, 2016) (holding that Delaware law would recognize reverse veil-piercing claim even though "Delaware appellate courts have never expressly recognized [it]"); *In re ALT Hotel, LLC*, 479 B.R. 781, 801-03 (Bankr. N.D. Ill. 2012) (collecting cases).

[8]The FSIA's impact on this particular point is discussed below.

[9]*See, e.g., Smith's Estate v. C.I.R.*, 292 F.2d 478, 479 (3d Cir. 1961) ("[W]henever a lawful dividend on particular stock is fully declared each stockholder becomes a creditor of the corporation with a vested right to be paid a specified sum at some future time."); *U.S. Indus., Inc. v. Anderson*, 579 F.2d 1227, 1230 (10th Cir. 1978) ("Dividends which are declared but unpaid are merely a corporate debt owed to the shareholders and failure to pay such dividends when due gives the shareholders a Cause of action on the debt."); *In re Classic Coach Interiors, Inc.*, 290 B.R. 631, 636 (Bankr. C.D. Ill. 2002) ("By no means is a declared but unpaid dividend an asset of the corporation, although it is an asset of the shareholders to whom it is owed."). *Cf. NBC Universal v. Paxson Commc'ns Corp.*, 2005 WL 1038997, at *10 (Del. Ch. Apr. 29, 2005)

occurred as part of the Transactions.

CITGO Defendants contend that this "transfer" fails to save Plaintiff's DUFTA claim because it was not made "by a debtor," and further that the FSIA and act of state doctrine bar the claim regardless. CITGO Defendants argue that, at the very least, CITGO Holding must be dismissed if this final dividend is the sole DUFTA "transfer." The Court turns to these arguments in the following sections.

### 2.      Whether any Transfer was Made "by a debtor"

DUFTA's plain language requires that the transfer be undertaken "by a debtor." 6 Del. C. § 1304(a)(1). CITGO Defendants correctly point out that, in the narrowest sense of the term, none of the Transactions at issue, including the final dividend payment, are alleged to have been directly undertaken "by" the "debtor" (i.e., Venezuela or its alleged alter ego, Petróleos). Petróleos was a transferee.

Yet DUFTA includes within its ambit "indirect . . . mode(s) . . . of disposing of or parting with an asset or an interest in an asset." 6 Del. C. § 1301(12). Moreover, "a court must begin with the statutory language," and courts presume that legislatures express their intent "through the ordinary meaning of the words" used in that language. *Delaware Cty., Pa. v. Fed. Hous. Fin. Agency*, 747 F.3d 215, 221 (3d Cir. 2014) (internal quotation marks omitted). Merriam-Webster's definitions for the word "by" include "through the agency or instrumentality of" and "on behalf of."[10] In deciding this motion, the Court must accept as true Plaintiff's allegations of

_____

(characterizing unpaid dividend as corporate liability); 6 Del. C. § 1306(4) ("A transfer is not made until the debtor has acquired rights in the asset transferred.").

[10] Merriam-Webster Online Dictionary, http://www.merriamwebster.com/dictionary/by (last visited September 29, 2016).

Venezuela's and/or its *alter ego*'s extensive, if not dominating, involvement in the Transactions. The only reasonable view of the Transactions, as alleged, is of an extraction of funds orchestrated by and carried-out under orders from Venezuela and/or Petróleos; that is, a transfer made in every meaningful sense "by a debtor." On this view, which the Court accepts at this stage of the proceedings, the Transactions were directly executed by an "instrumentality of" the debtor or on its "behalf" and, in that respect, "by" the debtor. *See id.*

The Complaint alleges a transfer of a debtor's property at the debtor's behest. It therefore properly alleges the existence of a fraudulent transfer under DUFTA. *See* 6 Del. C. § 1304(a).

### 3.   Proper Defendants

CITGO Defendants note that "there is no debtor-creditor relationship" between them and Plaintiff. (D.I. 9 at 7) Delaware courts, in rejecting attempts to extend DUFTA liability to aiders and abettors, have noted that "the only proper defendants in a fraudulent conveyance action . . . are the transferor and any transferees." *Quadrant Structured Products Co. v. Vertin*, 102 A.3d 155, 203 n.17 (Del. Ch. 2014) (internal quotation marks omitted). In virtually every case, the "transferor" is more specifically a "debtor-transferor." *See, e.g., Edgewater Growth Capital Partners, L.P. v. H.I.G. Capital, Inc.*, 2010 WL 720150, at *2 (Del. Ch. Mar. 3, 2010) ("[DUFTA] only provides for a cause of action by a creditor against debtor-transferors or transferees."). Here, neither of the CITGO Defendants is a debtor or transferee.[11]

---

[11]Plaintiff argues that CITGO Defendants are transferors and transferees, based on its argument that the Transactions' proceeds were always substantively Venezuelan property and, hence, property of a debtor at every stage. As explained above, the Court rejects this argument and finds that no transfer of a debtor's property occurred until the final dividend was declared and the Transactions' proceeds became assets of Petróleos. The final dividend is the relevant "transfer," which makes PDVH a transferor.

PDVH's continued presence in this action is appropriate. The unique circumstances of the case make PDVH a non-debtor transferor. DUFTA does not explicitly preclude the presence of such a transferor; all that DUFTA requires is a transfer of the debtor's property with sufficient involvement of the debtor. DUFTA broadly provides for the application of "the principles of law and equity" unless "displaced by [DUFTA's] provisions." 6 Del. C. § 1310. The Court has already concluded that the Complaint alleges a fraudulent transfer to which PDVH was a direct party, making it an appropriate defendant in this case. Plaintiff is not barred from asserting a DUFTA claim on these facts. Instead, under the circumstances, it would be anomalous to dismiss PDVH because it was merely a transferor rather than a debtor-transferor.

Whether CITGO Holding is also a proper party is less clear. CITGO Defendants contend that treatment of the final dividend as the relevant "transfer" requires CITGO Holding's dismissal from the case. (D.I. 15 at 4 n.4) Plaintiff counters that the Transactions should be "collapsed" and viewed as a single event. Bankruptcy courts use the "collapsing doctrine" to simplify transactions and boil them down to their true substantive nature. *See, e.g., In re Syntax-Brillian Corp.*, 573 F. App'x 154, 160 (3d Cir. 2014) (describing collapsing doctrine as "an equitable tool by which a court may 'collapse' multiple apparently innocuous transactions for purposes of a fraudulent transfer analysis and consider the economic reality of the integrated whole"). Applying the doctrine here might support an argument that CITGO Holding is a transferor as well.

The collapsing doctrine is often used to analyze the motivations for a transfer as opposed to whether (and when) a transfer of debtor property occurred in the first place. *See, e.g., In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 547 (D. Del. 2005) ("[I]n evaluating the validity of the

11

Transaction, the court considers it as one transaction."). This is not the issue the Court faces here. Rather, the DUFTA analysis focuses on whether and when "property of a debtor" was "transferred" and, if so, who the parties to that transfer were. The Court has not encountered any case applying the collapsing doctrine in such a circumstance.

The Court concludes that the collapsing doctrine does not cleanly fit this case, as its application would effectively alter the "form" of the Transactions rather than their substantive nature. The latter is not in dispute at this stage. The doctrine's application would have the effect of (i) turning CITGO Holding into a substantive transferor, which would impermissibly imply Petróleos held property rights in Transaction funds prior to the final dividend declaration; and/or (ii) impermissibly treat CITGO Holding as an accomplice or co-conspirator. *See Quadrant Structured Products*, 102 A.3d at 203 n.17. It would also be inconsistent with the condition that "a transfer is not made until the debtor has acquired rights in the asset transferred." 6 Del. C. § 1306(4).

In sum, Plaintiff's DUFTA claim strains the statute's structure. Nevertheless, the Complaint alleges a fraudulent transfer, and DUFTA provides for a range of remedies that may be appropriate.[12] Under the circumstances, PDVH, a non-debtor transferor of debtor property, is an appropriate defendant. In contrast, CITGO Holding will be dismissed from the case, because it was not a party to a fraudulent transfer under DUFTA and cannot be held liable as an accomplice or co-conspirator.

---

[12]Because the discussion relating to remedies under the unique circumstances of this case is heavily wrapped up in sovereign immunity issues, the Court defers it to its FSIA analysis below.

12

### B.   Civil Conspiracy

CITGO Defendants contend that, even if Plaintiff's DUFTA claim survives their motion, Plaintiff's civil conspiracy claim must be dismissed.  (D.I. 9 at 10)  CITGO Defendants cite to *Edgewater Growth Capital*, 2010 WL 720150, at *2, for the proposition that "[DUFTA] does not create a cause of action for aiding and abetting, or conspiring to commit, a fraudulent transfer." Plaintiff responds that the rationale in *Edgewater* is inapplicable here because Plaintiff's civil conspiracy claim "is not an attempt to extend liability to non-transferors or transferees, but rather an alternative path to relief against the same defendants that are liable under DUFTA."  (D.I. 14 at 20)

Putting aside that a conspiracy claim would in fact "attempt to extend liability" to CITGO Holding, which the Court has found is not a transferor or transferee, this "alternative path to relief" is inconsistent with Delaware law.  In *Quadrant Structured Products*, 102 A.3d 155 at 203, the Court of Chancery reiterated the principal that "[u]nder Delaware law, a conspiracy cannot be predicated on fraudulent transfer" (internal quotation marks omitted).  *Quadrant* went on to note that "[t]o the extent [the civil conspiracy count] seeks to impose secondary liability based on primary wrongs pled in [the fraudulent transfer counts], it fails to state a claim on which relief can be granted."  *Id.*  Accordingly, Plaintiff's civil conspiracy claim will be dismissed.

### C.   Foreign Sovereign Immunities Act

CITGO Defendants contend[13] that "to the extent that Plaintiff . . . targets the property of

---

[13]The parties disagree as to whether CITGO Defendants have standing to assert FSIA immunity on Venezuela's behalf.  But even if CITGO Defendants lack standing to do so, the apparent involvement of sovereign property requires the Court to consider the FSIA's application on its own motion.  *See Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1124-28 (9th Cir. 2010) (collecting cases); *Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 799 (7th Cir. 2011), as

Venezuela," the FSIA, 28 U.S.C. § 1602 *et seq.*, requires dismissal of Plaintiff's claims. (D.I. 9 at 11) The FSIA provides that "the property in the United States of a foreign state shall be immune from attachment arrest and execution," subject to certain exceptions. 28 U.S.C. § 1609; *see also* §§ 1610, 1611. CITGO Defendants argue that Plaintiff's claim is barred by the FSIA's prohibition of prejudgment attachments, and that the remedies sought by Plaintiff are similarly impermissible.

### 1.    Is Plaintiff's Action Barred by the FSIA's Prejudgment Immunity?

The FSIA bars "attachment[s] prior to the entry of judgment" in the absence of explicit waiver by a foreign sovereign of that immunity. 28 U.S.C. § 1610(d).[14] CITGO Defendants argue that the FSIA preempts Plaintiff's state-law fraudulent transfer claim, based on CITGO Defendants' characterization of the claim as "prejudgment" in nature. Because the Transactions took place prior to entry of any judgment, CITGO Defendants contend, any liability for those transfers is the equivalent of a prejudgment attachment, from which Venezuela is protected by virtue of the FSIA's prejudgment immunity.

Underlying this argument is the principle that, to the extent the Transactions involved Venezuelan property, Venezuela and/or its *alter ego* were presumptively free to move their property in and out of the U.S. unencumbered. *See Rubin*, 637 F.3d at 799. CITGO Defendants

---

corrected (Apr. 1, 2011) ("[T]he court must address [the immunity] regardless of whether the foreign state appears and asserts it.").

[14]Plaintiff has not specifically alleged any waiver on Venezuela's part of its FSIA immunity with respect to the Transactions, and it appears undisputed that no waiver had occurred at the time the Transactions were undertaken. Counsel for Plaintiff suggested at oral argument that Venezuela's participation in the related arbitration in Washington, D.C., may constitute "waiver [as] to any assets that are in the United States." (Tr. at 54) The Court need not address the waiver issue because it does not view Plaintiff's DUFTA claims as prejudgment in nature.

argue that DUFTA is preempted by "Congress's judgment that U.S. courts cannot interfere with the use or disposition of a foreign state's property before a judgment has been entered." (D.I. 9 at 13)  To CITGO Defendants, Plaintiff's present assertion of a DUFTA claim seeks to impose liability based on a transfer that was immunized when it occurred.  Again, CITGO Defendants believe this is the equivalent of seeking an invalid prejudgment attachment of Transaction proceeds.  (*See* Tr. at 77 ("[T]here is no question that DUFTA essentially [im]mobilizes assets in this country or creates liability if you do, which is the same thing as immobilizing."))

CITGO Defendants, therefore, read the FSIA to prohibit fraudulent transfer liability for transfers undertaken by foreign sovereigns prior to the entry of judgment.  They argue that any liability from such purportedly "lawful" conduct would frustrate Congress's objectives in enacting the FSIA.  (*See, e.g.,* Tr. at 18-19 ("[C]reating liability in [CITGO Defendants] basically . . . means there was . . . a penalty for . . . Venezuela moving its money overseas."))

The Court is not persuaded by CITGO Defendants' attempt to stretch the statute's "immun[ity] from attachment arrest and execution," *id.* § 1609, to become immunity from all liability for the transfer of property that was non-attachable at the time of transfer.  No direct support is offered for CITGO Defendants' proposition that attachment immunity equals lawfulness and, therefore, precludes all conceivable forms of potential liability.  There is nothing in the FSIA's text that bars eventual liability for a transfer of property which was immune from attachment when the transfer was made.  To the contrary, the Act provides that, "[a]s to any claim for relief with respect to which a foreign state is not entitled [jurisdictional immunity from suit], the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606.

15

Neither the parties nor the Court have identified any case on point. (*See generally* Tr. at 76-77) CITGO Defendants cite a number of cases for the proposition that the FSIA bars "the application of any state law, court process, or order that immobilizes the assets of a foreign sovereign." (D.I. 9 at 12) As the Second Circuit has stated, "[t]he FSIA would become meaningless if courts could eviscerate its protections merely by denominating their restraints as injunctions against the negotiation or use of property rather than as attachments of that property." *S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 418 (2d Cir. 1983). The cases cited by CITGO Defendants dealt principally with provisional remedies sought during the pendency of an underlying civil action. But Plaintiff's DUFTA claim does not seek a prejudgment "restraint;" it seeks relief based on an alleged scheme to devalue certain potentially executable assets, relief that would only be obtained (or, from Defendants' perspective, imposed) ***after*** judgment is entered in this case.

CITGO Defendants also rely on *Export-Import Bank of the Republic of China v. Grenada*, 768 F.3d 75 (2d Cir. 2014). In that case, the Second Circuit dismissed as moot an appeal of a decision denying attachment of certain funds because the funds had, in the meantime, been "transferred to Grenada . . . [and] became part of the undifferentiated property of the sovereign." *Id.* at 86. The rationale there was based on mootness; the property sought no longer existed for attachment. *Id.* at 86-87. Here, however, the relief sought is not limited to (and will not necessarily even include) the return of sovereign property held abroad.

CITGO Defendants' approach overreads the FSIA's provisions. Pursuing a remedy based on a prejudgment transfer is not the same as attaching funds prior to the entry of judgment, even if the pursuit of that remedy might discourage transfers of immunized property under certain

16

circumstances.

For these reasons, the Court does not view Plaintiff's fraudulent transfer claim as barred

by the FSIA, notwithstanding Plaintiff's attempt to impose liability based on a transfer of funds

which would not have been attachable when the Transactions were carried out.[15]

### 2.    Does the FSIA Preclude the Remedies Sought by Plaintiff?

The Court's finding above does not free Plaintiff's DUFTA claim from FSIA scrutiny.

Plaintiff seeks a judgment potentially directing the return of $2.8 billion in Transaction proceeds

to the United States, or in the alternative a damages award.  Plaintiff also seeks a judgment

enjoining Defendants from transferring any remaining Transaction proceeds out of the United

States and further enjoining any other attempts to remove assets from the United States.

CITGO Defendants question whether the $2.8 billion transfer from PDVH to its parent

company is a "voidable" transfer under DUFTA.  As CITGO Defendants note, federal courts

"generally lack authority in the first place to execute against property in other countries,"

*Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2257 (2014); *see also Walters v.*

*People's Republic of China*, 672 F. Supp. 2d 573, 574 (S.D.N.Y. 2009) ("[U]nder the FSIA,

assets of foreign states located outside the United States retain their traditional immunity from

execution to satisfy judgments entered in United States courts.") (internal quotation marks

omitted); *Ex-Im Bank of China*, 768 F.3d at 86-87.  A finding that the dividend transfer is not

---

[15]To the extent that CITGO Defendants are suggesting that any DUFTA relief that
Plaintiff seeks related to the alleged expropriation of its assets is "prejudgment" for purposes of
applying the FSIA unless and until an arbitration award is confirmed, the Court is unpersuaded
by that argument as well.  Neither the Complaint nor any motion filed in this matter requests
provisional relief.  Rather, Plaintiff seeks a final resolution on the merits of its fraudulent transfer
claim.

"voidable" might also bar Plaintiff's alternative claim for damages. *See* 6 Del. C. § 1308(b) (providing "judgment for the value of the asset transferred" is available "to the extent a transfer is voidable").

But even if PDVH prevails in persuading the Court these remedies are precluded (an issue the Court does not today decide), other types of relief remain available to Plaintiff. As noted above, DUFTA incorporates broader equitable principles, *see id.* § 1310, and those principles allow the Court to craft "any . . . relief the circumstances may require," *id.* § 1307(a)(3)(c); *see also In re Mobilactive Media, LLC*, 2013 WL 297950, at *32 (Del. Ch. Jan. 25, 2013) ("DUFTA provides broad remedies to creditors and leaves considerable leeway for the exercise of equitable discretion."). Assuming that Plaintiff obtains a final judgment on the merits in its favor, CITGO Defendants offer no convincing explanation as to why, for example, PDVH could not at least be enjoined from further transfer of its assets out of the country. *See* 6 Del. C. § 1307(a) (providing for "relief against a transfer," including injunction against "further disposition by the debtor or a transferee, or both, of the asset transferred or of other property").

The FSIA may ultimately limit the types of relief available to Plaintiff, should it prevail on the merits of its DUFTA claim. However, CITGO Defendants have failed to show that the FSIA precludes all of Plaintiff's requested relief. As a result, the FSIA does not require dismissal of this action.

### D.    Act of State Doctrine[16]

CITGO Defendants contend that Plaintiff's claims are barred by the act of state doctrine, because resolution of Plaintiff's claim "would call into question the validity of an official act performed within the sovereign's territory." (D.I. 15 at 7)  The act of state doctrine's application involves balancing the national interest with the desire of litigants to obtain decisions on the merits of their claims. *See Envtl. Tectonics v. W.S. Kirkpatrick, Inc.*, 847 F.2d 1052, 1058 (3d Cir. 1988).  Due to the tension inherent in such a balance, the Supreme Court has not imposed "rigid rules to govern the doctrine's application," leaving district courts responsible for making the determination on a case-by-case basis. *Id.*  As part of this analysis, courts are called upon to "analyze the nature of the questioned conduct and the effect upon the parties in addition to appraising the sovereign's role." *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1293 (3d Cir. 1979).  The doctrine is "not lightly to be imposed." *Id.*; *see also Envtl. Tectonics*, 847 F.2d at 1060 n.9 (expressing "concerns with too sweeping an application of the doctrine").

On one side of the scale is Plaintiff's significant interest in litigating the propriety of the Transactions and potentially obtaining a judgment and relief.  On the other side of the scale, there is no evidence from which the Court could now conclude that litigation of this matter would pose significant challenges to the executive branch's ability to conduct foreign affairs.  Importantly, in this litigation the Court is ***not*** being asked to adjudicate Venezuela's actions with respect to

---

[16]During oral argument, counsel for Plaintiff suggested for the first time that CITGO Defendants lack standing to assert the act of state doctrine. (*See* Tr. at 28-29)  Even if this contention is not deemed waived, and even if CITGO Defendants lack standing to raise the doctrine, the Court can and would raise the doctrine on its own motion. *See Hourani v. Mirtchev*, 796 F.3d 1, 12 n.6 (D.C. Cir. 2015) ("Because the Act of State doctrine is a rule of judicial restraint, courts may raise the doctrine *sua sponte*.").

19

Plaintiff's mining rights. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964)

(concluding act of state doctrine prohibited challenge to validity of expropriation). Instead, it

need only assess the decisions to move monies in a possible attempt to hinder creditors.

Furthermore, much of the conduct put at issue by Plaintiff's claims took place within the United

States. *See generally Envtl. Tectonics*, 847 F.2d at 1057-58 (act of state doctrine requires courts

to refrain from "judging the validity of a foreign state's governmental acts in regard to matters

within that country's borders."). Of further note, the Federal Arbitration Act provides that

"confirmation of arbitral awards, and execution upon judgments based on orders confirming such

awards shall not be refused on the basis of the Act of State doctrine." 9 U.S.C. § 15.

 The Court will deny the motion to dismiss without prejudice as to the act of state

doctrine. Should the issue be raised again, the parties should consider providing the Court with

evidence of the impact, if any, of the maintenance of this suit on U.S. relations with Venezuela.

## IV.    CONCLUSION

 For the reasons explained above, CITGO Defendants' motion to dismiss Plaintiff's claims

will be denied in part and granted in part. CITGO Holding will be dismissed from this action.

An appropriate Order follows.