# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> PETRÓLEOS DE VENEZUELA, S.A. and PDV HOLDING, INC. <br><br> Defendants. | Civil Action No. 15-1082-LPS |

Raymond J. DiCamillo, Jeffrey L. Moyer, and Travis S. Hunter, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE

Robert L. Weigel, Jason W. Myatt, and Rahim Moloo, GIBSON, DUNN & CRUTCHER LLP, New York, NY

    Attorneys for Plaintiff Crystallex International Corp.


Samuel T. Hirzel, II, PROCTOR HEYMAN ENERIO LLP, Wilmington, DE

Joseph D. Pizzurro, Peter J. Behmke, and Julia B. Mosse, CURTIS, MALLET-PREVOST, COLT & MOSLE LLP, New York, NY

    Attorneys for Defendant Petróleos de Venezuela, S.A.

## MEMORANDUM OPINION

May 1, 2017
Wilmington, Delaware

STARK, U.S. District Judge:

## I. BACKGROUND

This case stems from allegations that the Bolivarian Republic of Venezuela ("Venezuela") unlawfully expropriated certain mining rights and investments belonging to a Canadian company, Plaintiff Crystallex International Corporation ("Crystallex"). According to Crystallex, Venezuela then orchestrated a scheme to monetize its American assets and pulled the proceeds out of the United States, with the goal of evading potential arbitration creditors, including Crystallex. (*See generally* D.I. 1)

Defendant Petróleos de Venezuela, S.A. ("PDVSA") is Venezuela's state-owned oil company and, undisputedly, an "agency or instrumentality" of Venezuela. (*See* D.I. 1 at 18-33 (alleging that PDVSA is Venezuela's *alter ego*); D.I. 28-2 at 1; D.I. 31 at 13 n.7) PDVSA directly and indirectly owns Defendant PDV Holding, Inc. ("PDVH") and CITGO Holding, Inc. ("CITGO Holding" and, together with PDVH, the "Delaware Subsidiaries"), both of which are Delaware corporations. Crystallex alleges that PDVSA instructed CITGO Holding to issue $2.8 billion in debt and pay the proceeds to its parent company, PDVH, as a dividend. Then, according to Crystallex, PDVH transferred this sum further up the ladder and out of the U.S. by issuing a dividend in the same amount to its own parent, PDVSA. It is alleged that the transactions effecting this repatriation of funds to Venezuela (the "Transfer(s)") "had no legitimate purpose" but, instead, were "designed deliberately to hinder and delay Venezuela's creditors." (D.I. 1 ¶ 55)

On November 23, 2015, Crystallex filed a complaint (D.I. 1) ("Complaint") asserting claims based on the Delaware Uniform Fraudulent Transfer Act, 6 Del. C. § 1301 *et seq.*

1

("DUFTA").[1] By its Complaint, Crystallex seeks a judgment ordering the return to the United States of $2.8 billion in Transfer proceeds, or alternatively an award of money damages against the defendants, as well as an injunction against further transfers of remaining funds or assets out of the United States. In April, 2016, the tribunal arbitrating the dispute between Crystallex and Venezuela awarded Crystallex more than $1.4 billion. (*See* D.I. 31 at 1) On March 25, 2017, the United States District Court for the District of Columbia confirmed the Crystallex arbitration award in an amount in excess of $1.2 billion. (*See* D.I. 61-1)

Meanwhile, PDVSA's co-defendants, PDVH and CITGO Holding, moved to dismiss the Complaint for failure to state a claim. (D.I. 8) On September 30, 2016, the Court issued a memorandum opinion and order dismissing CITGO Holding, but not PDVH, from the case. (*See* D.I. 34, 35) An interlocutory appeal from the Court's order on the Delaware Subsidiaries' motion to dismiss is presently pending in the United States Court of Appeals for the Third Circuit. (*See* D.I. 40, 58)

The Court now turns to PDVSA's separate motion to dismiss under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* ("FSIA" or "Act"), and Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (*See* D.I. 28) The parties fully briefed PDVSA's motion (*see* D.I. 28-2, 31, 32), and the Court heard oral argument on December 20, 2016 (*see* D.I. 57 ("Tr.")). For the reasons stated below, the Court will grant PDVSA's motion.

---

[1]Crystallex also asserted a claim for common law civil conspiracy. (*See* D.I. 1 at 37) The Court has already dismissed this claim as against the Delaware Subsidiaries (*see* D.I. 34 at 13) and the parties to the pending motion do not appear to believe that any civil conspiracy claim is still being pressed against PDVSA.

2

## II. LEGAL STANDARDS

### A  Subject Matter Jurisdiction

Rule 12(b)(1) "authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring his claim." *Samsung Elec. Co., Ltd. v. ON Semiconductor Corp.*, 541 F. Supp. 2d 645, 648 (D. Del. 2008). A motion to dismiss for lack of subject matter jurisdiction may present either a facial attack or a factual attack. *See CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008); Fed. R. Civ. P. 12(b)(1). A facial attack "concerns an alleged pleading deficiency," while a factual attack concerns the "failure of a plaintiff's claim to comport factually with the jurisdictional prerequisites." *CNA*, 535 F.3d at 139 (internal quotation marks and brackets omitted).

Here, PDVSA brings a facial challenge to the Court's subject matter jurisdiction. (*See* D.I. 28-2 at 5 n.3) PDVSA has not introduced extrinsic evidence, and the parties' briefs and arguments reflect disagreement over "the legal sufficiency of the plaintiff's jurisdictional allegations." *Rong v. Liaoning Province Gov't*, 452 F.3d 883, 888 (D.C. Cir. 2006) (internal quotation marks omitted). Therefore, the Court will "take the plaintiff's factual allegations as true and determine whether they bring the case within any of the [FSIA's] exceptions." *Id.* (internal quotation marks omitted); *see also Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) ("When considering a facial attack, the Court must consider the allegations of the complaint as true, and in that respect such a Rule 12(b)(1) motion is similar to a Rule 12(b)(6) motion.") (internal quotation marks omitted).

### B.  Personal Jurisdiction

Rule 12(b)(2) directs the Court to dismiss a case when it lacks personal jurisdiction over

3

the defendant. On a motion to dismiss for lack of personal jurisdiction, "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Pursuant to the FSIA, prerequisites for personal jurisdiction over a foreign sovereign or its agencies or instrumentalities are that there be subject matter jurisdiction and service of process. *See* 28 U.S.C. § 1330.

C.     **Failure to State a Claim**

Evaluating a motion to dismiss under Rule 12(b)(6) requires the Court to accept as true all material allegations of a complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, [the] plaintiff is not entitled to relief." *Id.*

III.   **DISCUSSION**

A.     **Subject Matter Jurisdiction**

1.     **PDVSA is presumptively immune under the FSIA**

The FSIA provides the sole means for "obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). However, foreign states and their agents and instrumentalities are "presumptively immune from the jurisdiction of United States courts unless one of the Act's express exceptions to sovereign immunity applies." *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 394 (2015)

4

(internal quotation marks omitted). While the "ultimate burden of proving immunity from suit" belongs to the foreign state or its agency or instrumentality, a plaintiff suing such a defendant must "establish that one of the exceptions to immunity applie[s]." *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1285 (3d Cir. 1993). That is, once a defendant makes a *prima facie* showing that it is a "foreign state," or an "agency or instrumentality" of a foreign state, "the burden shifts to the plaintiff to produce sufficient evidence demonstrating the application of one of the statutory exceptions to immunity." *Ezeiruaku v. Bull*, 617 F. App'x 179, 181 (3d Cir. 2015) (citing *Fed. Ins.*, 12 F.3d at 1282).

Here, Crystallex alleges that PDVSA is an "agency or instrumentality" of Venezuela, which PDVSA does not deny. (*See* D.I. 1 ¶ 15 (quoting 28 U.S.C. § 1603(b)); D.I. 28-2 at 1) It is undisputed, therefore, that the FSIA is applicable. It is further undisputed that PDVSA is presumptively immune from suit. What is disputed is whether Crystallex has met its burden of production to establish that one of the FSIA's exceptions to immunity is satisfied.

### 2. FSIA's "commercial activity" exceptions to immunity

Crystallex contends that it has met its burden by showing that PDVSA's conduct comes within the scope of one or more clauses of the FSIA's "commercial activity" exceptions to immunity. FSIA's "commercial activity" exceptions are set out in § 1605(a)(2), reproduced below:

> A foreign state shall **not** be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based[:]
>
> > [i] upon a commercial activity carried on in the United States by the foreign state; or

> [ii] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or
>
> [iii] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

(Bracketed text, spacing, and emphasis added)

In order for any of the three "commercial activity" exceptions to immunity to apply, Crystallex must first show that PDVSA's alleged conduct was "commercial activity." On this point, Crystallex has met its burden. Indeed, PDVSA does not appear to contest that the actions it is alleged to have taken are treated as "commercial activity" under the FSIA.

Pursuant to the statute, "commercial activity" can be either "a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* Hence, a "foreign sovereign's actions are 'commercial'" when the foreign state "acts, not as regulator of a market, but in the manner of a private player within it." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). That is:

> [T]he question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in "trade and traffic or commerce."

*Id.* (internal citation omitted; emphasis in original).

The Court agrees with Crystallex that the Transfers constitute "commercial activity"

6

under the FSIA's definition. (*See* D.I. 31 at 7) As Crystallex writes, "PDVSA's receipt of $2.8 billion in dividends from its wholly-owned Delaware Subsidiaries following a series of transactions it orchestrated is exactly the kind of activity in which a private party might engage." (*Id.* at 8) Whatever PDVSA's actions were in connection with the Transfers, they were not acts of a "regulator" of a market but, instead of a "private player within it."

Each of the "commercial activity" clauses has at least one additional requirement that must be established. The Court now turns to these considerations.

### a. First clause: "in the United States"

Pursuant to the first clause of the FSIA's "commercial activity" exception, a foreign agency or instrumentality is not immune from a suit that is "based upon" that agency or instrumentality's "commercial activity carried on in the United States." 28 U.S.C. § 1605(a)(2). Crystallex contends that this first clause exception applies to PDVSA. (*See* D.I. 31 at 7-11)

The FSIA defines "commercial activity carried on in the United States by a foreign state" as "commercial activity carried on by such state and having substantial contact with the United States." 28 U.S.C. § 1603(e); *see also, e.g., Triple A Int'l, Inc. v. Democratic Republic of Congo*, 721 F.3d 415, 417 (6th Cir. 2013); *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 709 (9th Cir. 1992). Hence, there may be two ways in which the first clause may be applicable: either the foreign state "must have carried on commercial activity directly ***in the United States***, or it must have carried on commercial activity ***with a substantial connection to the United States***." *Fed. Ins.*, 12 F.3d at 1286 (emphasis added).

Crystallex has not established that its DUFTA claim is "based upon" "commercial activity" that PDVSA "carried on ***in the United States***." A claim is "'based upon' the 'particular

7

conduct' that constitutes the 'gravamen' of the suit," so courts must "zero[] in on the core" of the action in assessing whether a claim is "based upon" particular "commercial activity." *Sachs*, 136 S.Ct. at 396 (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 358 (1993)). In *Sachs* – which involved personal injuries suffered by the plaintiff as she boarded a train operated by the defendant in Austria, for which she had purchased a ticket in the U.S. – the "gravamen" of the suit "plainly occurred abroad," as her claim was based on the "tragic episode in Austria, allegedly caused by wrongful conduct and dangerous conditions in Austria, which led to injuries suffered in Austria." *Id.* "However Sachs frames her suit," the Court concluded, "the incident in [Austria] remains at its foundation." *Id.*

With respect to Crystallex's DUFTA claim, the "gravamen," "core," and "foundation" lies ***not*** in PDVSA's general "course of commercial conduct" with respect to its Delaware Subsidiaries, but, instead, in PDVSA's "particular act" of directing the Transfers, allegedly with fraudulent intent. 28 U.S.C. § 1603(d). Absent the fraudulent intent, the identical transactions comprising the Transfers would not (even arguably) give rise to a DUFTA claim. (*See* Tr. at 10 ("They have no claim based upon the transaction in the United States alone. Their claim is based on the intent to hinder, delay or defraud.")) In other words, if the same, identical Transfers were carried out ***without*** the alleged fraudulent intent, there would be no cognizable claim that could be brought by Crystallex. The fraudulent intent, hence, is inextricably part of the "gravamen," "core," and "foundation" of Crystallex's claim.

As PDVSA is located in Venezuela, and is not alleged to have any operations in the U.S., the alleged fraudulent intent must have been formed and executed in Venezuela. As counsel explained at oral argument, "[t]he core of this case is Venezuela. All of the evidence of

8

[fraudulent] intent, if there was such an intent, has to be in Venezuela." (Tr. at 11) While the Court must take as true that this fraudulent intent continued throughout the entire implementation of the Transfers – it was not just a momentary or fleeting "state of mind" – there is no well-pleaded allegation of any moment at which PDVSA possessed a fraudulent intent "in the United States" *and* acted "in the United States."

Crystallex argues that "PDVSA's claim that its intent is the only relevant act and that such intent can only be found in Venezuela ignores the language of DUFTA and its list of badges of fraud – actions within the United States from which intent may be presumed." (D.I. 31 at 11 n.5 (citing 6 Del. C. § 1304(b))) But DUFTA's badges of fraud are simply examples of circumstantial evidence that may be considered "[i]n determining actual intent." 6 Del. C. § 1304(b). They are not necessarily "actions within the United States." That is, these factors which (sometimes, but not necessarily always) establish fraudulent intent are not probative of *where* that intent was formed and held.

Crystallex contends that PDVSA's ownership and control of its Delaware Subsidiaries, along with its actions "to reduce the value of its assets in the U.S. and to move the cash generated from that process out of the U.S. by directing [PDVH] to issue a dividend," are "enough to establish jurisdiction" based on commercial activity in the United States. (D.I. 31 at 9) Crystallex also points to overlapping management between PDVSA and the Delaware Subsidiaries. (*See id.*)

PDVSA responds that the Complaint lacks "a single pleaded fact to explain what PDVSA allegedly did to 'orchestrate,' 'direct' or 'perpetuate' the transfers, *where such acts occurred*, or what conduct allegedly constituted PDVSA's 'commercial activity in the United States.'" (D.I.

28-2 at 9 (quoting D.I. 1 ¶¶ 7, 8, 15, 19) (emphasis added); *see also* Tr. at 7-8 ("They don't say that there were meetings in the United States. They don't say there were phone calls in the United States.")) In PDVSA's view, "the Complaint fails to allege that PDVSA did *anything* in the United States." (D.I. 28-2 at 9)

The Court agrees with PDVSA that the Complaint fails to allege where PDVSA's acts occurred; the only plausible inference is that they occurred where PDVSA is solely located: in Venezuela. While the Delaware Subsidiaries' actions are adequately alleged to have taken place in the U.S., it does not follow that the alleged actions of their parent, PDVSA, are also adequately alleged to have taken place in the U.S.[2] In fact, the Complaint is deficient on this point as to PDVSA.

As noted above, there may be a second way in which the first clause exception from immunity is satisfied: where the claim is "based upon" "commercial activity . . . *having substantial contact with the United States*." 28 U.S.C. §1603(e) (emphasis added). Contrary to Crystallex's apparent view (*see* D.I. 31 at 8; Tr. at 36-37), satisfaction of this exception still requires some conduct by the foreign nation, instrumentality, or agency *in the United States*.

The Sixth Circuit has explained this requirement. In *Triple A*, 721 F.3d 415, a Michigan corporation sued the Congolese government. The plaintiff alleged breach of a contract for the purchase of military equipment entered into by the Congo's predecessor, Zaire. *See id.* at 416. The plaintiff apparently conceded that there had been no conduct by Zaire within the United States. *See id.* at 417. It nonetheless maintained that jurisdiction could be exercised because

---

[2]Crystallex does not appear to seriously contest PDVSA's assertion that applying the principles of agency – and treating the Delaware Subsidiaries' actions in the U.S. as PDVSA's actions in the U.S. – would be inappropriate here. (*See* D.I. 28-2 at 10-11; D.I. 31 at 10 n.4)

10

Zaire's entry into a contract with a U.S.-based company established "substantial contact with the United States." *Id.* The Sixth Circuit rejected this argument and explained that § 1603(e) could not "permit[] suits . . . in which the foreign state conducted no commercial activity at all in the United States." *Id.* Application of this first § 1605(a)(2) exception in a manner that does not require commercial activity within the United States "would . . . make nonsense of the language that § 1603(e) is supposed to define." *Id.*

Other courts have taken a similar view. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1132 (9th Cir. 2012) ("[T]he requirement that the commercial activity be carried on in the United States . . . means that the lawsuit itself must be based upon the foreign sovereign's commercial activity within the United States.") (internal quotation marks and citation omitted); *Verlinden B.V. v. Cent. Bank of Nigeria*, 488 F. Supp. 1284, 1294 (S.D.N.Y. 1980) ("[T]he plaintiff must identify a 'regular course of commercial conduct' or a 'particular commercial transaction or act' carried on here [in the United States]; demonstrate that this activity has 'substantial contact(s)' with the United States; and prove that its cause of action is 'based upon' the commercial activity."), *aff'd on other grounds*, 647 F.2d 320 (2d Cir. 1981), *rev'd on other grounds*, 461 U.S. 480 (1983).

Not all courts have reached the same conclusion. *See, e.g., Rubin v. Islamic Republic of Iran*, 33 F. Supp. 3d 1003, 1009 (N.D. Ill. 2014) ("The defined term does ***not*** require that the commercial activity actually take place within the borders of the United States, but rather that the activity have substantial contacts with the United States.") (emphasis added); *Supra Med. Corp. v. McGonigle*, 955 F. Supp. 374, 380 (E.D. Pa. 1997); *see also generally Swarna v. Al-Awadi*, 622 F.3d 123, 147 (2d Cir. 2010) (stating that "the Supreme Court has called . . . the commercial

11

activity exception['s]" language "obtuse") (internal quotation marks omitted).

But there is no binding precedent on this point.³ Thus, the Court follows the cases it has found most persuasive. Therefore, because Crystallex does not set out a claim "based upon" "commercial activity" by PDVSA *in the United States*, the first clause of the "commercial activity" exception does not apply.

Mere ownership and control of Delaware subsidiaries, and "overlapping management" (D.I. 31 at 9), do not suffice. *See generally First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"); *EM Ltd. v. Banco Cent. de la Republica Argentina*, 800 F.3d 78, 90-93 (2d Cir. 2015) (explaining and applying *Bancec*'s "presumption that government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such") (internal quotation marks omitted). While Crystallex insists that "[t]here can be no serious dispute that . . . PDVSA's exercise of its rights as a sole stockholder, its direction of the transfer of funds among its Delaware subsidiaries, and the payment of a dividend . . . took place in whole or at least in part in the U.S." (D.I. 31 at 8-9), this statement is as conclusory as Crystallex's inadequate Complaint. Nowhere does the Complaint (or Crystallex's briefing and oral argument) include any allegation that any of the alleged conduct *by PDVSA* took place "*in* the United States." 28 U.S.C. § 1605(a)(2) (emphasis added). *See generally Simon v. Republic of Hungary*, 812 F.3d 127, 148 (D.C. Cir. 2016)

---

³A precedential decision of the Third Circuit that considered the FSIA, *Sugarman v. Aeromexico, Inc.*, 626 F.2d 270, 273 (3d Cir. 1980), does not address the issue before this Court. *Sugarman*, which is not cited by the parties here and predates several relevant decisions of the Supreme Court, *see Sachs*, 136 S. Ct. 390; *Nelson*, 507 U.S. 349, dealt with a foreign instrumentality airline that carried on regular, extensive commercial airline activities in the United States. There are no similar allegations against PDVSA.

(explaining that jurisdictional inquiry under FSIA "is similar to that of Rule 12(b)(6), under which [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice") (internal citations and quotation marks omitted; alteration in original); *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 146 (2d Cir. 2001) ("To sustain federal jurisdiction on generic allegations . . . absent an assertion or evidence of a factual predicate for such jurisdiction, would invite plaintiffs to circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations . . . in their complaints.").

It is unclear whether Crystallex has adequately alleged even the "minimum contacts" to meet the lesser standard required for showing personal jurisdiction. *See generally Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 391 (D. Del. 2012) (finding ownership of, control over, and receipt of payments from Delaware corporation – which was allegedly involved in fraudulent transfer – to be insufficient to satisfy minimum contacts for personal jurisdiction purposes); *ACE & Co. v. Balfour Beatty PLC*, 148 F. Supp. 2d 418, 422-23 (D. Del. 2001) ("[T]he mere fact that a non-Delaware corporation owns a Delaware subsidiary is not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-Delaware parent.") (collecting cases). Substantial contact, the showing required by the FSIA, involves more than the "minimum contacts" required for personal jurisdiction. *See, e.g., In re Papandreou*, 139 F.3d 247, 253 (D.C. Cir. 1998) ("We have never decided precisely what 'substantial contact' amounts to in the FSIA context, though we have said that it requires more than the minimum contacts sufficient to satisfy due process in establishing personal jurisdiction."), *superseded by statute on other grounds as recognized in Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 90 (D.C. Cir. 2002); *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1019 (2d Cir. 1991) (explaining

that while "Congress left it to the courts to define the contours of 'substantial contact' between a foreign state's commercial activity and the United States," Congress "clear[ly] . . . intended a tighter nexus than the 'minimum contacts' standard for due process") (citing cases). It follows, again, that Crystallex has not met its even higher burden of establishing the applicability of the "substantial contact" immunity analysis.

In sum, because the conduct at the heart of the Complaint's allegations is extraterritorial and/or insubstantially connected to the United States, the first clause of § 1605(a)(2) does not provide a basis for finding subject matter jurisdiction in this Court with respect to Crystallex's claim against PDVSA.

### b. Second clause: act performed in the U.S. "in connection with" commercial activity elsewhere

The second clause turns "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. § 1605(a)(2). This second clause "is generally understood to apply to *non-commercial* acts in the United States that relate to commercial acts abroad." *Kensington Int'l, Ltd. v. Itoua*, 505 F.3d 147, 157 (2d Cir. 2007) (internal quotation marks omitted; emphasis in original).

PDVSA contends that the second clause does not apply because "the Complaint fails to specifically allege any act of PDVSA in the United States." (D.I. 28-2 at 12) Additionally, in PDVSA's view, "all of the activity alleged to have occurred in the United States [i.e., by the Delaware Subsidiaries] is commercial in nature." (*Id.* at 12-13)

Crystallex takes the position that the second clause of the commercial activities exception does not apply because PDVSA engaged in commercial activities within the U.S. (D.I. 31 at 11

n.5) But, in the alternative, if – as has happened – the Court were to view PDVSA's activities as something other than commercial activities within the U.S., then, in Crystallex's view, the second clause would apply. (*See id.*)

As the Court has already held, Crystallex's DUFTA claim is not "based upon" any act PDVSA performed within the United States. In the absence of an allegation that PDVSA has performed ***any act*** in the U.S., it follows that PDVSA is not alleged to have performed any "noncommercial act" in this country. Accordingly, the second clause of the commercial activity exception from immunity is inapplicable.

### c. Third clause: act with a "direct effect" in the U.S.

The third "commercial activity" exception from immunity applies to actions based upon "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere" when that act "***causes a direct effect in the United States***." 28 U.S.C. § 1605(a)(2) (emphasis added). Crystallex's DUFTA claim is "based upon" an act outside of the U.S. – PDVSA's instructions to its subsidiaries – in connection with commercial activity elsewhere – PDVSA's management of its subsidiaries generally, which occurs at least in part outside of the United States. With these prerequisites satisfied, the issue becomes whether PDVSA's extraterritorial acts in connection with managing the Delaware Subsidiaries "caused a direct effect in the United States."

"A direct effect is one which has no intervening element, but, rather, flows in a straight line without deviation or interruption." *Cruise Connections Charter Mgmt. 1, LP v. Attorney Gen. of Canada*, 600 F.3d 661, 664 (D.C. Cir. 2010) (internal quotation marks and ellipses omitted); *see also Weltover*, 504 U.S. at 618 ("[A]n effect is direct if it follows as an immediate

15

consequence of the defendant's activity.") (internal quotation marks and punctuation omitted). To have a direct effect, it is not necessary that the impact be "substantial" or "foreseeable." *Weltover*, 504 U.S. at 618.

Crystallex asserts that PDVSA's "manipulation of its subsidiaries into taking on $2.8 billion in debt and transferring $2.8 billion out of Delaware had a 'direct effect' in the U.S." (D.I. 31 at 11) It explains that one "immediate consequence of PDVSA's receipt of $2.8 billion was to leave its Delaware-based subsidiary insolvent on a GAAP basis, furthering PDVSA's and Venezuela's scheme to hinder and delay creditors in enforcement proceedings." (*Id.* at 12)

However, the Court agrees with PDVSA that the "alleged frustration of a potential, future judgment in the United States" is not a direct harm for purposes of application of the third clause of the commercial activities exception of the FSIA. (D.I. 32 at 6) As PDVSA accurately describes, the Complaint here alleges merely that "the transfers hindered [Crystallex's] ability in the United States to collect on its anticipated, but [then] non-existent, arbitral award against Venezuela." (D.I. 28-2 at 14) "At the time of the allegedly fraudulent transfers, Crystallex, a Canadian corporation, was engaged in an international arbitration against Venezuela involving activities that had nothing whatsoever to do with the United States." (D.I. 28-2 at 15)

In *Kensington*, 505 F.3d 147, the plaintiff brought a civil RICO claim against a state-owned Congolese oil company. The *Kensington* Court rejected the plaintiff's argument that an "elaborate scheme to thwart legitimate creditors" satisfied the "direct effect" requirement by virtue of the scheme's "interference with a judgment obtained . . . in the United States." *Id.* at 158. As the Second Circuit explained in *Kensington*, unlike a contract – which may require performance in a particular location – a "judgment does not have a 'place of performance.'" *Id.*

16

at 159. It follows, as PDVSA contends, that "alleged interference with an anticipated arbitral award, or anticipated judgment, does not have a 'direct effect' *in the United States*, because neither Venezuela nor PDVSA has any obligation to pay the award or judgment in the United States." (D.I. 28-2 at 16 (emphasis in original)) Instead, as in *Kensington*, what Crystallex has alleged as a "direct effect" in the U.S. is more accurately characterized as a series of indirect consequences of an allegedly elaborate scheme that was formulated elsewhere. (*See* D.I. 32 at 5-6 ("If, as explained in *Kensington*, a scheme to thwart legitimate creditors from collecting an *existing* judgment in the United States cannot have a 'direct' or 'immediate' consequence in the United States, then a transaction allegedly designed to frustrate a potential arbitration award, which *had not yet been rendered much less reduced to a judgment* in the United States, certainly cannot.") (internal quotation marks omitted; emphasis in original))

A case on which Crystallex relies, *Cruise Connections*, 600 F.3d 661, does not alter the Court's conclusion. In *Cruise Connections*, the Court found a "direct effect in the United States" from a Canadian agency's termination of a contract with a U.S.-based company, which caused loss of revenue and the termination of subcontracts incident to the main contract. The Court explained that "nothing in the FSIA requires that the 'direct effect in the United States' harm the plaintiff . . . only that the foreign government's act . . . cause a direct effect in the United States." (D.I. 31 at 13 (internal brackets omitted)) From *Cruise Connections*, Crystallex discerns the proposition that it need not show any direct effect of PDVSA's actions on Crystallex itself, so long as it shows some direct effect on the United States. (*See* Tr. at 41-42) But the Court does not read *Cruise Connections* as supporting so broad a conclusion. The termination of the main contract at issue in *Cruise Connections* resulted in the cancellation of two subcontracts to which

17

the plaintiff was a party. Consequently, "no intervening event stood between [the Canadian agency's] termination of the contract and the lost revenues from the travel agency contract and the Charter Party Agreements." *Id.* at 664. Crystallex's reading of *Cruise Connections* omits this important aspect of the Court's holding – and it is this aspect of the required "direct effect" that is missing here.

None of PDVSA or its subsidiaries' alleged conduct had a direct, "straight line" impact on Crystallex. When the Transfers occurred, Crystallex was litigating an arbitration proceeding against Venezuela. It had no judgment against PDVSA or any of its subsidiaries. The arbitration itself and confirmation of any arbitration award (perhaps among other intervening events) stood between Crystallex and execution on PDVSA's allegedly devalued assets. Given these "intervening elements," the Court cannot conclude that Crystallex's DUFTA claim is "based upon" an act having a "direct effect" in the United States. 28 U.S.C. § 1605(a)(2).

\* \* \*

Because the Complaint's allegations fail to provide a basis for jurisdiction under any of the three commercial activity exceptions in § 1605(a)(2), sovereign immunity bars Crystallex's action against PDVSA. *See* 28 U.S.C. § 1604. Therefore, the Court lacks subject matter jurisdiction with respect to Crystallex's DUFTA claim against PDVSA and PDVSA must be dismissed as a defendant.

### B. Personal Jurisdiction

The parties agree that PDVSA's motion to dismiss for lack of personal jurisdiction rises or falls with the Court's ruling on subject matter jurisdiction. (*See* D.I. 28-2 at 16-17 (citing 28 U.S.C. § 1330(b)); D.I. 31 at 13 n.7) Given the Court's finding that it lacks subject matter

jurisdiction, it follows that the Court lacks personal jurisdiction as well. Accordingly, PDVSA

will be dismissed for lack of personal jurisdiction.

### C. Failure to State a Claim

Given the Court's lack of subject matter and personal jurisdiction with respect to

PDVSA, it is unnecessary to also address whether Crystallex has failed to state a claim against

PDVSA on which relief may be granted. To the extent PDVSA is raising the same challenges

that the Delaware Subsidiaries did with respect to whether the Court may grant relief on

Crystallex's DUFTA claim (*see, e.g.*, D.I. 28-2 at 4 (attempting to incorporate by reference

arguments made in Delaware Subsidiaries' briefs); Tr. at 59-60 (describing overlap with

Delaware Subsidiaries' motion)), the Court has nothing to add to the views expressed in the

earlier Memorandum Opinion (D.I. 34).[4]

## IV. CONCLUSION

For the reasons explained above, PDVSA's motion (D.I. 28) will be granted, and PDVSA

will be dismissed as a party to this matter. An appropriate Order follows.

---

[4] As noted earlier, an interlocutory appeal from the Court's order on the Delaware Subsidiaries' motion to dismiss is pending in the Third Circuit.